**Carlos Rivera RAMOS,
et al., Plaintiffs,**

v.

**Julio Cesar ROMAN, et al., Defendants.**

**No. CIV. 93–2416(DRD).**

United States District Court,
D. Puerto Rico.

Jan. 31, 2000.

Charles S. Hey–Maestre, San Juan, PR, for plaintiff.

Russell A. Del–Toro, Del Toro & Santana, San Juan, PR, Orlando Duran–Medero, San Juan, PR,John M. Garcia–Nokonechna, Garcia & Fernandez Law Offices, Hato Rey, PR, Jose R. Gaztambide–Aneses, Gaztambide & Plaza, Hato Rey, PR, Alex Gonzalez, Old San Juan, PR, Israel Roldan–Gonzalez, Aguadilla, PR, Roberto E. Ruiz–Comas, San Juan, PR, for defendants.

## ORDER

DOMINGUEZ, District Judge.

Pending before the Court is a litany of Co-defendants', Julio César Román ("César"), Luis Torres Massa ("Torres"), Juan del Valle ("Valle"), and César Soto ("Soto"), motions for summary judgment (Docket Nos. 220, 221, 222, & 223), requesting the dismissal of this case pursuant to the applicable statute of limitations. Plaintiffs, Carlos Rivera Ramos, Armando Rivera Tirado, and Rivera & Rivera, Inc. (collectively "Riveras"), opposed. (Docket No. 229). For the reasons that follow Co-defendants' motions are **GRANTED** and Plaintiffs' federal claims are hereby **DISMISSED** and the Plaintiffs' Puerto Rico law causes of action are **DISMISSED WITHOUT PREJUDICE.**

### I. FACTS

Although the facts of this case are pivotal to the present Order, they are well expressed in the First Circuit's Opinion, see *Rivera–Ramos v. Roman,* 156 F.3d 276 (1st Cir.1998), and this Court's previous Order, (Docket No. 198), and are thus reiterated here without citation only to the extent necessary to resolve the pending statute of limitations issue.

The present suit was brought in October 1993 by two individual plaintiffs—Carlos Rivera Ramos and Armando Rivera Tirado—and their company, Rivera & Rivera, Inc., which was in turn owned by both of them and by their fathers (who were brothers). According to the Amended Complaint, Rivera & Rivera owned a hardware store in the municipality of Aguada, Puerto Rico, which was licensed in 1969 by the Puerto Rico Treasury Department to legally engage in the commerce of firearms. Named as defendants, among others, were the municipality of Aguada; Julio Cesar Roman, mayor of Aguada in 1969; Lieutenant Cesar Soto, then a police officer and the director for the western area of Puerto Rico of the Office of Intelligence of the Puerto Rico Police Depart-

ment; Commander Juan del Valle, then director and in overall charge of the same intelligence division; and Luis Torres Massa, then superintendent of the Puerto Rico Police Department. All others originally named as defendants have been dismissed.

■ The gravamen of the Amended Complaint was that before and during 1969–70, the Puerto Rico Police Department's intelligence division engaged in a practice, later held unlawful under Puerto Rico law, of spying on and keeping dossiers ("carpetas") on citizens of Puerto Rico who supported independence for Puerto Rico; that during 1969, an investigation of the two individual plaintiffs was conducted by the intelligence division; that following the investigation the Treasury Department revoked Rivera & Rivera's license to sell firearms and refused an application for a new license; that the police, in late 1969 or early 1970, raided the hardware store and confiscated firearms and ammunition; and that the defendants were responsible for these events. At all relevant times concerning the Amended Complaint, Plaintiffs Carlos Rivera Ramos and Armando Rivera Tirado have believed in and been vocal advocates for the independence of Puerto Rico and were members of the Puerto Rican Independence Party (PIP).[1] The Police Department maintained dossiers on the plaintiffs since 1962. Plaintiff Carlos Rivera received his dossier from the Commonwealth of Puerto Rico on or about December 1992. Plaintiff Armando Rivera received his dossier on or about February 1993.

As a first cause of action, plaintiffs sought relief under 42 U.S.C. § 1983, urging that the conduct alleged violated plaintiffs' federal constitutional rights of free speech and free association and due process of law. In the second cause of action, the same conduct was described as a violation of the Puerto Rico Constitution and the Puerto Rico Civil Code. The plaintiffs sought compensatory damages for loss of income and emotional pain and suffering "in excess" of $2 million and punitive damages "in excess" of $1 million. Plaintiffs demanded a jury trial.

## II. SUMMARY JUDGMENT STANDARD

A court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact ..." FED. R. CIV. P. 56(c). "In applying this formulation, a fact is 'material' if it potentially affects the outcome of the case," *Vega–Rodriguez v. Puerto Rico Tel. Co.*, 110 F.3d 174, 178 (1st Cir.1997), and " 'genuine' if a reasonable factfinder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." *Cortés–Irizarry v. Corporación Insular De Seguros*, 111 F.3d 184, 187 (1st Cir.1997). The court should

---

1. The Plaintiffs' Amended Complaint states:

 "Plaintiffs Armando Rivera Tirado and Carlos Rivera Ramos have throughout their lives, including the present, been firm believers in, and vocal advocates for, the independence of Puerto Rico. They have consistently associated with other individuals, groups, and political parties that seek to achieve this goal by legal means, including but not limited to the Partido Independentista Puertorriqueño (PIP)."

 (Docket No. 59, Amended Complaint ¶ 17). "A party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceed-

ing." *Schott Motorcycle Supply, Inc. v. American Honda Motor Co.*, 976 F.2d 58, 61 (1st Cir.1992) (citations omitted). Plaintiffs did not plead the above as an alternative or hypothetical pleading. Therefore, Plaintiffs cannot contradict the above factual assertion contained in their pleading. *See id.* at 61–62; *see also* (Docket No. 229, Plaintiffs' Statement of Material Facts ¶ 7) ("At all times relevant to the complaint, plaintiffs Armando Rivera Tirado and Carlos Rivera Ramos were believers in independence for Puerto Rico. They were members of the Puerto Rican Independence Party (PIP). They were not known in Aguada to be very active politically.").

" 'look at the record ... in the light most favorable to ... the party opposing ... the motion' ... [and] indulge all inferences favorable to the party opposing the motion." *Hahn v. Sargent,* 523 F.2d 461, 464 (1st Cir.1975) (quoting *Poller v. Columbia Broadcasting System,* 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962)) (citations omitted). However, the nonmovant must "present definite, competent evidence to rebut the motion." *Mesnick v. General Electric Co.,* 950 F.2d 816, 822 (1st Cir. 1991), *cert. denied,* 504 U.S. 985, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992). "The court may consider any material that would be admissible or usable at trial." *See* 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2721, at 361 (3d ed.1998). "But the court should do no more than this in reviewing the quality of the evidence. Most critically, it must never 'weigh the evidence and determine the truth of the matter....' " *Lipsett v. University of P.R.,* 864 F.2d 881, 895 (1st Cir.1988) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986)). Furthermore, "[n]o credibility assessment may be resolved in favor of the party seeking summary judgment." *Woodman v. Haemonetics Corp.,* 51 F.3d 1087, 1091 (1st Cir.1995) (citations omitted). "Summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Medina–Muñoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990).

### III. DISCUSSION

The First Circuit, in *Rivera–Ramos v. Roman,* 156 F.3d 276, 282–283 (1st Cir. 1998), invited this District Court to revisit the statute of limitations issue before tackling anew the qualified immunity defense. Although the Court has previously ruled on this issue twice, the First Circuit's invitation is heeded. Once, on September 8, 1994, in a terse Order,[2] the Court denied a Motion To Dismiss (Docket No. 13) on the limitations issue. (Docket No. 26). The second was contained in the same Order denying the motions for summary judgment (Docket No. 198), which precipitated the abovementioned interlocutory appeal on the issue of qualified immunity.

In a Scheduling Conference, the Court ordered the Defendants to draft motions squarely presenting the issue of limitations and the Plaintiffs to oppose. (Docket No. 217). The parties have duly complied.

As an initial concern, the Plaintiffs assert that the Court is precluded from entertaining this issue for a third time, regardless of the guidance provided by the First Circuit. The Court disagrees.

■ The first motion on the issue of the statute of limitations was a motion to dismiss not a motion for summary judgment, and whose abrupt denial lends nothing to the refiling of a summary judgment motion. (Docket No. 26). *See Perez–Ruiz v. Crespo–Guillen,* 25 F.3d 40, 42 (1st Cir. 1994) ("Interlocutory orders, including denials of motions to dismiss, remain open to trial court reconsideration, and do not constitute the law of the case.") (citations omitted); *see also Commerce Oil Refining Corp. v. Miner,* 303 F.2d 125, 128 (1st Cir.1962) ("a ruling denying a motion to dismiss is not the law of the case, and is not final even in the district court"). The second motion was a motion for summary judgment, which was denied. (Docket No. 198). Although the interlocutory appeal could not deal with the prescription issue, *see Rivera–Ramos v. Roman,* 156 F.3d at 282, the First Circuit had sufficient documentation before it to make, at least, a preliminary determination that the issue

---

2. At that time the case was assigned to another judge. The order stated: "Having considered the Motion to Dismiss filed on March 10, 1994 (**docket no. 13**) and the opposition filed on March 17, 1994 (**docket no. 15**), said motion is DENIED." (Docket No. 26) (emphasis in original).

may have been improperly decided by the Court and graciously provided said forecast.[3] Further, on a separate occasion the First Circuit has ventured to opine on the particular issue of the "law of the case" doctrine as follows:

> Appellants first challenge the dismissal order on the ground that the earlier district court ruling denying the motion to dismiss in the Lopez action became the "law of the case" in the consolidated action. Appellants misapprehend the "law of the case" doctrine. Interlocutory orders, including denials of motions to dismiss, remain open to trial court reconsideration, and do not constitute the law of the case. *Union Mut. Life Ins. Co. v. Chrysler Corp.*, 793 F.2d 1, 15 (1st Cir.1986) (citing 1B James W. Moore et al., Moore's Federal Practice ¶ 0.404[4.1], at 124 n. 4 ("[U]ntil entry of judgment, [interlocutory orders] remain subject to change at any time. The

doctrine of law of the case does not limit the power of the court in this respect.") (emphasis added) (2d ed.1993)); *see also Commerce Oil Refining Corp. v. Miner*, 303 F.2d 125, 128 (1st Cir.1962) ("a ruling denying a motion to dismiss is not the law of the case, and is not final even in the district court"). Second, although the law of the case doctrine implements an important judicial policy against reconsidering settled matters, it "is neither an absolute bar to reconsideration nor a limitation on a federal court's power." *United States v. Rivera–Martinez*, 931 F.2d 148, 150–51 (1st Cir.), *cert. denied*, 502 U.S. 862, 112 S.Ct. 184, 116 L.Ed.2d 145 (1991).

*Perez–Ruiz v. Crespo–Guillen*, 25 F.3d 40, 42 (1st Cir.1994). Whereas, a final judgment has not been entered in the instant case, the Court exercises its inherent power to reconsider the statute of limitations issue.

---

3. The First Circuit's guidance on this issue is presented here *in toto:*

 "For section 1983 actions, federal law governs the date on which a cause of action accrues (i.e., when the statute begins to run) while the length of the period and tolling doctrine are taken from local law. *Torres v. Superintendent of Police*, 893 F.2d 404, 406–07 (1st Cir.1990). The Puerto Rico statute provides a one-year period for tort actions. *Id.* Assuming (as is likely) that the statute began to run when the license was revoked in 1969 or 1970, Puerto Rico law would toll the statute of limitations if—because of active or fraudulent concealment—a reasonable person would not have been able to discover the basis for the lawsuit. *E.g., Rivera–Gomez v. de Castro*, 900 F.2d 1, 3 (1st Cir.1990). [FN5]

 FN5. *Morris v. Government Development Bank*, 27 F.3d 746, 749–50 (1st Cir.1994); *Torres*, 893 F.2d at 407–08. *But cf. Barrett v. United States*, 689 F.2d 324, 327–30, 333 (2d Cir.1982), *cert. denied*, 462 U.S. 1131, 103 S.Ct. 3111, 77 L.Ed.2d 1366 (1983) (suggesting that a cause of action may in some circumstances accrue only upon discovery of the "wrong" rather than the earlier harm).

 However, even assuming such culpable concealment, Puerto Rico law requires due diligence by the plaintiff in investigating suspicious circumstances. *See Rivera–Go-*

 *mez*, 900 F.2d at 3; *Ramirez Morales v. Rosa Viera*, 815 F.2d 2, 5 (1st Cir.1987). The district judge's version of the plaintiffs' own testimony suggests that the plaintiffs admitted that they were told by others in the town and even by the police that the license revocation, seizure of weapons, or both were prompted by plaintiffs' pro-independence views. The district court says that the plaintiffs then submitted sworn statements "clarifying their deposition testimony" and affirming that they were never told "the official reasons" for the closing of the store. Yet the legal standard required them to undertake a reasonable investigation based on suspicious circumstances.

 Of course, plaintiffs may argue that there would have been no way for them to learn of the dossiers in less than 20 years, even if they had brought a contemporaneous lawsuit. *Cf. Rivera–Gomez*, 900 F.2d at 3. Or there may be other problems with or answers to the statute of limitations defense that are not apparent on the face of the district court's opinion. But as matters stand, the district court and the parties may want to give some further thought to the due diligence issue before expending resources on the very complex legal and factual problems raised by qualified immunity and a merits trial."

 *Rivera–Ramos v. Roman*, 156 F.3d at 282–283.

### A. Statute Of Limitations For Section 1983: Period Under Puerto Rico Law—One Year.

■ "For section 1983 actions, federal law governs the date on which a cause of action accrues (i.e., when the statute begins to run) while the length of the period and tolling doctrine are taken from local law. The Puerto Rico statute provides a one-year period for tort actions." *Rivera–Ramos v. Roman,* 156 F.3d at 282 (citing *Torres v. Superintendent of Police of P.R.,* 893 F.2d 404, 406–07 (1st Cir.1990)); *see* P.R. LAWS ANN. tit. 31, § 5298 (1994); *Owens v. Okure,* 488 U.S. 235, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989); *Wilson v. Garcia,* 471 U.S. 261, 271–280, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985); *Carreras–Rosa v. Alves–Cruz,* 127 F.3d 172, 174 (1997). In other words, Plaintiffs are required to bring a § 1983 claim within "365 days, or 366 days in a leap year" one day after the time their cause of action accrued under federal law, unless the statute of limitations can be tolled pursuant to Puerto Rico law. *Carreras–Rosa v. Alves–Cruz,* 127 F.3d at 174; *see also Salamanca v. American Airlines, Inc.,* 920 F.Supp. 24, 26 (D.P.R.1996).

### B. Accrual Under Federal Law: Plaintiffs Knew Or Had Reason To Know.

■ "Although the limitations period is determined by state law, the date of accrual is a federal law question. The accrual period for a § 1983 action 'ordinarily starts when the plaintiff knows, or has reason to know, of the injury on which the action is based.'" *Carreras–Rosa v. Alves–Cruz,* 127 F.3d at 174 (quoting *Rivera–Muriente v. Agosto–Alicea,* 959 F.2d 349, 353 (1st Cir.1992)); *see McIntosh v. Antonino,* 71 F.3d 29, 34 (1st Cir.1995); *Muniz–Cabrero v. Ruiz,* 23 F.3d 607, 610 (1st Cir.1994); *Lafont–Rivera v. Soler–Zapata,* 984 F.2d 1, 3 (1st Cir.1993); *Street v. Vose,* 936 F.2d 38, 40 (1st Cir.1991) (the limitations period begins to run when a plaintiff "knows or has reason to know of the injury which is the basis of the action") (internal quotation marks and citation omitted); *Torres v. Superintendent of Police of P.R.,* 893 F.2d 404, 407 (1st Cir.1990); *Marrapese v. Rhode Island,* 749 F.2d 934, 936 (1st Cir. 1984), *cert. denied,* 474 U.S. 921, 106 S.Ct. 252, 88 L.Ed.2d 259 (1985); *see also Morris v. Government Dev. Bank of P.R.,* 27 F.3d 746, 748–749 (1st Cir.1994) ("Under the federal rule, accrual commences when a plaintiff knows, or has reason to know, of **the discriminatory act** that underpins his cause of action." *Id.* (emphasis added)). The First Circuit also provided an indication of the likely outcome on the issue of when this cause of action accrued by stating, "[a]ssuming (as is likely) that the statute began to run when the license was revoked in 1969 or 1970." *Rivera–Ramos v. Roman,* 156 F.3d at 282. Notwithstanding, the Court has conducted an independent analysis and arrived at the conclusion which the First Circuit utilized as an assumption.

■ The Court now turns to "[t]he first step in fixing the accrual is to identify the **actual injury** of which the plaintiff complains." *Guzman–Rivera v. Rivera–Cruz,* 29 F.3d 3, 5 (1st Cir.1994) (emphasis added) (citing *Heck v. Humphrey,* 512 U.S. 477, 483, 114 S.Ct. 2364, 2370–71, 129 L.Ed.2d 383 (1994)); *see Calero–Colon v. Betancourt–Lebron,* 68 F.3d 1, 3 (1st Cir. 1995); *see also Lafont–Rivera v. Soler–Zapata,* 984 F.2d at 3 ("In determining when plaintiff became aware (or should have been aware) of his alleged injury, our first task is to identify the injury of which he complains.") *Id.* According to the Plaintiffs' version of the facts, one day in late 1969 or early 1970, their license [4] to sell firearms was revoked and their inventory of firearms and ammunition was confiscated from their store in Aguada, Puerto Rico, by police officers pursuant to a writ-

---

**4.** The Court acknowledges that a factual issue may exist regarding who, if any, of the Plaintiffs, actually possessed a license to sell firearms, however, this issue is not material to the Court's holding.

ten order by the Treasury Department of Puerto Rico. *See Amended Complaint* (Docket No. 59, ¶ 27); *Plaintiffs' Statement of Material Facts* (Docket No. 229, ¶¶ 4, 11). Undoubtably, armed with these facts alone, by 1970 the Plaintiffs' knew that they had suffered a substantial,[5] palpable injury; revocation of their license and confiscation of their inventory. *See Chardon v. Fernandez,* 454 U.S. 6, 8, 102 S.Ct. 28, 29, 70 L.Ed.2d 6 (1981) (per curiam) (In *Delaware State College v. Ricks,* 449 U.S. 250, 258, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980), "we held that the proper focus is on the time of the *discriminatory act,* not the point at which the consequences of the act become painful." *Id.* (emphasis added): holding plaintiffs' action accrued on dates of receipt of termination letter rather than later actual termination dates). They also knew that persons within the government of Puerto Rico, particularly the police and Treasury departments, were culpable for the revocation decision. *See Martinez Torrado v. Colon Montes,* 779 F.Supp. 668 (D.P.R. 1991) (Under federal law, "[a]lthough the names of the defendants were admittedly still in the possession of the government, this did not prevent the accrual of the cause of action; rather, any obstruction on the part of the government would have been a ground for tolling the statute.) Applying the reasoning of [*United States v.*]*Kubrick,* [444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979),] the plaintiff only needed to resort to a competent professional, like a lawyer, to make sense of the information he had." *Id.* at 671. The court then reached a similar result under Puerto Rico law. *See id.* As will be explained in depth later in this opinion, the Treasury Department revoked Plaintiffs' license and the police department carried out the revocation/confiscation. The Court holds that the Plaintiffs action accrued the day the police effectuated the confiscation of Plaintiffs' firearms and ammunition pursuant to the Department of Treasury's revocation of the Plaintiffs' license to sell firearms, and thus unless tolling puts a uprights the hourglass, the one year worth of sand began to trickle through the hourglass no later than early 1970. *See e.g. Benitez–Pons v. Comonwealth of Puerto Rico,* 136 F.3d 54, 60 (1st Cir.1998).[6]

The Plaintiffs assert that although they were aware of the injury, nevertheless the accrued did not commence until their "carpetas" (political dossiers) were released because then is when they knew that the discriminatory act was politically motivated. The Court disagrees and briefly explains.

Although in the context of employment discrimination, the First Circuit has specifically rejected a very similar contention on the issue of accrual:

> "The rule in an employment discrimination case is that the limitations period begins to run when the claimant receives unambiguous and authoritative notice of the discriminatory act (which is another way of saying that the period begins to run when the employee learns of the adverse employment action).

. . . . .

---

**5.** "For more than ten years prior to 1969, plaintiffs were licensed by the Commonwealth of Puerto Rico and by the United States Government to sell firearms. Plaintiffs had continually engaged in the business of selling firearms through their hardware store business in Aguada, Puerto Rico. The sale of firearms accounted for a *substantial* part of plaintiffs income and attracted customers to their hardware business where clients would purchase other items on sale." *Amended Complaint* (Docket No. 59, ¶ 16).

**6.** "The plaintiff asserts that his property and liberty interests were violated when he was allegedly deprived of his license without due process. We assume *arguendo* that his claim accrued at the latest possible date, December 28th, 1992, the day the plaintiff's license was permanently revoked, allegedly without due process. Because the plaintiff did not file his complaint in federal court until May 2, 1995, these claims are also time barred by the statute of limitations unless the statute was tolled under Puerto Rico law." *Benitez–Pons v. Puerto Rico,* 136 F.3d at 60.

This initiative rests on the notion that appellant's claim did not accrue until he knew of both the suspension and the defendants' discriminatory animus. Stated a different way, appellant contends that his cause of action existed in what amounts to a state of suspended animation until he became aware of the racial and political motives behind the adverse employment decision. We cannot countenance this contention.

It is by now well established that, in employment discrimination actions, limitations periods normally start to run when the employer's decision is made and communicated to the affected employee. *See Ricks*, 449 U.S. at 261, 101 S.Ct. at 505–06; *see also Muniz–Cabrero v. Ruiz*, 23 F.3d 607, 610 (1st Cir. 1994) (explaining that, in such situations, the "limitations period ... ordinarily starts when the plaintiff knows ... of the harm on which the action is based") (citation and internal quotation marks omitted); *Nahmod supra,* § 9.04 at 252–53 (collecting cases). This rule of law is grounded on a solid foundation: when an employee knows that he has been hurt and also knows that his employer has inflicted the injury, it is fair to begin the countdown toward repose. And the plaintiff need not know all the facts that support his claim in order for countdown to commence. *See Sturniolo v. Sheaffer, Eaton, Inc.,* 15 F.3d 1023, 1025 (11th Cir.1994); *Blumberg v. HCA Mgmt. Co.,* 848 F.2d 642, 645 (5th Cir.1988), *cert. denied,* 488 U.S. 1007, 109 S.Ct. 789, 102 L.Ed.2d 781 (1989); *see also Baker v. Board of Regents of State of Kan.,* 991 F.2d 628, 632 (10th Cir.1993); *Rivera–Muriente,* 959 F.2d at 354; *cf. Jensen,* 912 F.2d at 521–22 (enunciating substantially similar rule in respect to time constraints applicable to the filing of administrative notices in Title VII cases).

Morris's case in no way warrants a departure from this settled rule of law. By October 9, appellant had learned authoritatively of his suspension. He knew the stated reason for it and could assess its legitimacy. He knew how he had conducted himself while on official business. As a veteran employee, he knew (or, alternatively, was chargeable with knowledge of) the agency's policies, practices, and precedents. No more was exigible. Appellant had sufficient information in October to enable him to bring a discrimination claim against the bank."

*Morris v. Government Dev. Bank of P.R.,* 27 F.3d at 750; *see also Chardon v. Fernandez,* 454 U.S. at 8, 102 S.Ct. at 29; *United States v. Kubrick,* 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979). Similarly, "[i]n actions challenging the denial or revocation of a license or permit, the claim typically is held to accrue when the plaintiff either knows or should have known of the denial or revocation." 2 JOSEPH G. COOK & JOHN L. SOBIESKI, JR., CIVIL RIGHTS ACTIONS § 4.02[B] at 4–41 (rel. 26 $^{12}$/₈₈ pub. 199) (citing *Jaghory v. New York State Dep't of Educ.,* 131 F.3d 326 (2d Cir.1997); *Burns v. Harris County Bail Bond Bd.,* 139 F.3d 513 (5th Cir. 1998); *Kelly v. City of Chicago,* 4 F.3d 509 (7th Cir.1993)); *see also Cathedral of Joy Baptist Church v. Village of Hazel Crest,* 22 F.3d 713 (7th Cir.1994); *Davis v. Louisiana State University,* 876 F.2d 412 (5th Cir.1989); *Baker v. Board of Regents,* 991 F.2d 628 (10th Cir.1993). In addition, "[i]n a § 1983 case concerning the unlawful taking of property, the statute of limitations begins to run on the date of the wrongful appropriation." *Altair Corp. v. Pesquera de Busquets,* 769 F.2d 30, 32 (1st Cir.1985). Regardless of whether the reason proffered for the confiscation/revocation was because of political discrimination (Plaintiffs were members of the independence party), as the Defendants contend, or that no reason was given at all, as the Plaintiffs contend, those *inter alia* reasons go to the tolling of this cause of action and not accrual. *See e.g. Martinez Torrado v. Colon Montes,* 779 F.Supp. at 668. In sum, no later than early 1970 Plaintiffs knew they were injured, by whom, and at minimum

had reason to know that the injury was illegitimate and hence, the clock began to tick. *See Chardon v. Fernandez*, 454 U.S. at 8, 102 S.Ct. at 29 (First Amendment claim for political reasons under § 1983—"focus is on the time of the discriminatory act" accrual occurred when notified of decision to terminate not termination.); *Delaware State College v. Ricks*, 449 U.S. 250, 258, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (National origin discrimination under Title VII and § 1981—discrimination action accrued "at the time the tenure decision was made and communicated to Ricks."); *Benitez–Pons v. Puerto Rico*, 136 F.3d at 60 (Federal and State Due Process claims under § 1983—"claim accrued at the latest possible date, December 28th, 1992, the day the plaintiff's license was permanently revoked, allegedly without due process.... these claims are also time barred by the statute of limitations unless the statute was tolled under Puerto Rico law."); *Morris v. Government Dev. Bank of P.R.*, 27 F.3d at 750.

### C. Tolling under Puerto Rico law.

■ Tolling, in a § 1983 action, is governed by state law. *See Board of Regents of Univ. of State of N.Y. v. Tomanio*, 446 U.S. 478, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980); *Benitez–Pons v. Puerto Rico*, 136 F.3d at 59. Puerto Rico law provides for tolling under Civil Code Article 1873 only for the commencement of a suit, an extrajudicial claim, or debtor's acknowledgment of debt. *See* P.R. LAWS ANN. tit. 31, § 5303 (1994);[7] *Benitez–Pons v. Puerto Rico*, 136 F.3d at 59; *Torres v. Superintendent of Police of P.R.*, 893 F.2d at 407.

None of these situations are applicable to the case at bar. *See id.* Even in the event Plaintiffs could prove that a extrajudicial claim was made, once the statute of limitations is tolled on an action, the one year period is reset and begins runs again from the beginning. *See e.g. Rodriguez Narvaez v. Nazario*, 895 F.2d 38, 43 (1st Cir.1990) (citations omitted). Thus, tolling under Article 1873 would be to no avail, because even if it were granted Plaintiffs would still be outside the one year statute of limitations by over twenty years. *See also* (Section III.D.Factor (3) of this opinion below which discusses Plaintiffs' diligence in pursuing their rights.).

### D. Equitable Tolling under Federal and Puerto Rico law.

Irrefutably, the Supreme Court has recognized that "[l]imitations periods in § 1983 suits are to be determined by reference to the appropriate 'state statute of limitations and the coordinate tolling rules.'" *Hardin v. Straub*, 490 U.S. 536, 539, 109 S.Ct. 1998, 2001, 104 L.Ed.2d 582 (1989) (quoting *Wilson v. Garcia*, 471 U.S. 261, 269, 105 S.Ct. 1938, 1943, 85 L.Ed.2d 254 (1985)); *see also Board of Regents of Univ. of State of N.Y. v. Tomanio*, 446 U.S. 478, 484, 100 S.Ct. 1790, 1795, 64 L.Ed.2d 440 (1980). Nevertheless, the Supreme Court has declined to decide whether the federal or state doctrine of equitable tolling applies to a § 1983 cause of action. *See Heck v. Humphrey*, 512 U.S. 477, 489, 114 S.Ct. 2364, 2373–2374, 129 L.Ed.2d 383 (1994).[8] Similarly, the First Circuit Court

---

7. "Prescription of actions is interrupted by their institution before the courts, by extrajudicial claim of the creditor, and by any act of acknowledgment of the debt by the debtor."
 P.R. LAWS ANN. tit. 31, § 5303 (1994).

8. "Even a prisoner who has fully exhausted available state remedies has no cause of action under § 1983 unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus. That makes it unnecessary for us to address the statute-of-limitations issue wrestled with by the Court of Appeals, which concluded that a federal doctrine of equitable tolling would apply to the § 1983 cause of action while state challenges to the conviction or sentence were being exhausted." (The court distinguished our cases holding that state, not federal, tolling provisions apply in § 1983 actions, *see Board of Regents of Univ. of State of N.Y. v. Tomanio*, 446 U.S. 478, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980); *Hardin v. Straub*, 490 U.S. 536, 109 S.Ct. 1998, 104 L.Ed.2d 582 (1989), on the ground that petitioner's claim was "in part

of Appeals, has declined to resolve the issue, *see Benitez–Pons v. Puerto Rico*, 136 F.3d at 61; *Torres Ramirez v. Bermudez Garcia*, 898 F.2d 224, 229 & n. 2 (1st Cir.1990); *see also Torres v. Superintendent of Police of P.R.*, 893 F.2d at 407 (Applying federal tolling doctrine prior to ambiguity surfaced), opting instead to analyze the cases under both Puerto Rico's equitable tolling and federal equitable tolling (fraudulent concealment) and for each case found that regardless of the doctrine employed, federal or state, the plaintiffs failed to establish either. To this exact same endeavor the Court now embarks.

Recently this Court issued an opinion on this very issue, *see Diaz v. Antilles Conversion & Export, Inc.*, 62 F.Supp.2d 463 (D.P.R.1999), which is quoted extensively herein without further citation.

 The Supreme Court has held that equitable tolling may be granted:

> "[where] a claimant has received inadequate notice, or where a motion for appointment of counsel is pending and equity would justify tolling the statutory period until the motion is acted upon, or where the court has led the plaintiff to believe that she had done everything required of her, ... [or] where affirmative misconduct on the part of a defendant lulled the plaintiff into inaction."

*Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 151, 104 S.Ct. 1723, 1725, 80 L.Ed.2d 196 (1984) (citations omitted). The First Circuit has refined this issue as follows:

> We have previously addressed equitable tolling under Puerto Rico law in § 1983 cases. "Puerto Rico law provides for equitable tolling in a case of 'damage willfully and wrongfully (dolosamente ) concealed by the author of the same.'" *Ramirez Morales v. Rosa Viera*, 815 F.2d 2, 4 (1st Cir.1987) (quoting *Rivera Encarnacion v. Estado Libre Asociado De Puerto Rico*, 113 D.P.R. 383, 386,

1982 WL 210553 (1982)). Similarly, under federal law, the plaintiff must show "excusable ignorance of the statute of limitations caused by some misconduct of the defendant." *Torres*, 893 F.2d at 407 (quotations and citations omitted). Equitable tolling is unavailable where a party fails to exercise reasonable diligence.

*Benitez–Pons v. Puerto Rico*, 136 F.3d at 61; *see also Chico–Velez v. Roche Products, Inc.*, 139 F.3d 56, 58–59 (1st Cir. 1998). "Equitable tolling is an exception [to the statute of limitations] and the burden for such relief rests on the party seeking it." *Hernandez Arce v. Bacardi Corp.*, 37 F.Supp.2d 112, 114 (D.P.R.1999) (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982); *Crown, Cork & Seal, Co. v. Parker*, 462 U.S. 345, 349, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983)). "Federal courts should not apply equitable tolling liberally to extend time limitations in discrimination cases." *Chico–Velez v. Roche Products, Inc.*, 139 F.3d 56, 58–59 (1st Cir.1998) (citing *Rys v. United States Postal Serv.*, 886 F.2d 443, 446 (1st Cir.1989); *Nunnally v. MacCausland*, 996 F.2d 1, 4 (1st Cir.1993) ("federal courts have 'typically extended equitable relief only sparingly.'") Id. (quoting *Irwin v. Department of Veterans Affiars*, 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990)); *Farrell v. Bank of New Hampshire–Portsmouth*, 929 F.2d 871, 874 (1st Cir.1991); *Mack v. Great Atl. & Pac. Tea Co.*, 871 F.2d 179, 185 (1st Cir.1989)). In fact,

> "[f]ederal courts have typically extended equitable relief only sparingly. We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass. We have generally been much less for-

one for habeas corpus." 997 F.2d, at 358.)"

*Heck v. Humphrey*, 512 U.S. at 489, 114 S.Ct. at 2373–2374.

giving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights."

*Irwin v. Department of Veterans Affairs,* 498 U.S. 89, 96, 111 S.Ct. 453, 457–458, 112 L.Ed.2d 435 (1990) (citations omitted). "In a nutshell, equitable tolling is reserved

for exceptional cases." [9] *Id.* "Some courts permit tolling of the statute of limitations if the plaintiff knew of a harm but not of its discriminatory basis. (citation omitted). But our approach to equitable tolling is narrower; First Circuit law permits equitable tolling only where the employer has actively misled the employee." [10] *Thomas*

9. *See Thomas v. Eastman Kodak Co.,* 183 F.3d 38, 53 (1st Cir.1999) (equitable tolling simply inapplicable because no allegation that employer actively attempted to mislead employee.) *American Airlines, Inc. v. Cardoza–Rodriguez,* 133 F.3d 111, 124 (1st Cir. 1998) (Employees had actual knowledge of their ADEA rights—tolling denied.); *Kelley v. NLRB,* 79 F.3d 1238, 1249–1250 (1st Cir. 1996) (Error committed did not rise to level required to trigger equitable tolling.); *Nunnally v. MacCausland,* 996 F.2d 1, 6–7 (1st Cir.1993) (equitable tolling may be available for mental incompetence and record raises genuine issue of material fact thereto—remanded); *Mercado–Garcia v. Ponce Fed. Bank,* 979 F.2d 890, 896 (1st Cir.1992) (Plaintiff had actual knowledge of right to file with EEOC and retained counsel throughout.); *Lavery v. Marsh,* 918 F.2d 1022, 1028 (1st Cir.1990) (unclear EEOC notice insufficient to justify equitable tolling, also Lavery did not rely on notice); *Jensen v. Frank,* 912 F.2d 517, 521 (1st Cir.1990) (record does not support a finding that Jensen was deceived nor was he oblivious to employer's motivations, therefore equitable tolling argument collapses under its own weight.) *Soto v. U.S. Postal Serv.,* 905 F.2d 537, 540–541 (1st Cir. 1990) ("alleged lack of clarity in EEOC's letter did not require the district court to equitably toll the thirty-day statute of limitations."); *Rys v. U.S. Postal Serv.,* 886 F.2d 443, 447 (1st Cir.1989) (EEOC letter may be unclear but equities do not favor tolling); *Mack v. Great Atl. and Pac. Tea Co.,* 871 F.2d 179, 185 (1st Cir.1989) (not posting job openings or failure to notify of promotional opportunities not "concealment"—no tolling available); *Kale v. Combined Ins. Co. of Am.,* 861 F.2d 746, 752 (1st Cir.1988) (equitable tolling for "excusable ignorance" inapposite where employee has notice or retains attorney); *Lopez v. Citibank, N.A.,* 808 F.2d 905, 907 (1st Cir.1987) (tolling inappropriate on insanity grounds where claimant represented by counsel during illness who pursued claim before EEOC); *Earnhardt v. Commonwealth of P.R.,* 691 F.2d 69, 71–74 (1st Cir.1982) (tolling not available when employer did not explain discharge and EEOC letter was not too vague, however remanded for evidentiary hearing on employers failure to post required notices to ascertain whether employee had actual or constructive notice.); *Daughtry v. King's Dep't Stores, Inc.,* 608 F.2d 906, 907–909 (1st Cir.1979) (claimant's delay and/or failure to file with EEOC caused by either state commission's delayed resolution or commission's failure to inform plaintiff of his rights with respect to EEOC is inexcusable but neither tolls time limits).

10. *See Chico–Velez v. Roche Products, Inc.,* 139 F.3d 56, 58–59 (1st Cir.1998) ("a prescriptive period is not tolled by filing a complaint that is subsequently dismissed without prejudice."); *American Airlines, Inc. v. Cardoza–Rodriguez,* 133 F.3d 111, 124 (1st Cir. 1998) ("Equitable tolling is appropriate when the plaintiff demonstrates 'excusable ignorance' of his statutory rights." Equitable tolling does not apply, however, if an employee is actually or constructively aware of his or her ADEA rights. An employee has actual knowledge of his rights if he "learns or is told of his ADEA rights, even if he becomes only generally aware of the fact there is a statute outlawing age discrimination.") Id. (citations omitted); *Kelley v. NLRB,* 79 F.3d 1238, 1248 (1st Cir.1996) (equitable tolling invoked against party, such as employer or an administrative agency, for affirmative conduct); *Nunnally v. MacCausland,* 996 F.2d 1, 5 (1st Cir.1993) (equitable tolling may be available for mental incompetence); *Mercado–Garcia v. Ponce Fed. Bank,* 979 F.2d 890, 896 (1st Cir.1992) (Tolling is appropriate for excusable ignorance caused by employer misconduct or employer failure to post EEOC notices.); *Lavery v. Marsh,* 918 F.2d 1022, 1028 (1st Cir.1990) (facts must constitute "affirmative misconduct"); *Jensen v. Frank,* 912 F.2d 517, 521 (1st Cir.1990) (equitable tolling requires that "the employer actively misled him and that he relied on the (mis)conduct to his detriment.") *Soto v. U.S. Postal Serv.,* 905 F.2d 537, 541 (1st Cir.1990) (requires "affirmative showing that one of the named equities existed" as stated in *Baldwin County Welcome Ctr. v. Brown,* 466 U.S. 147, 151, 104 S.Ct. 1723, 1725, 80 L.Ed.2d 196 (1984)); *Rys v. U.S. Postal Serv.,* 886 F.2d 443, 447–448 (1st Cir. 1989) (equity requires active governmental misconduct); *Mack v. Great Atl. and Pac. Tea Co.,* 871 F.2d 179, 185 (1st Cir.1989) ("exception for concealment is 'appropriate only

v. *Eastman Kodak Co.*, 183 F.3d 38, 53 (1st Cir.1999) (citing *Mack v. Great Atl. & Pac. Tea Co.*, 871 F.2d 179, 185 (1st Cir. 1989) (noting that the First Circuit's "narrow view" of equitable tolling reaches only "active deception"); *Jensen v. Frank*, 912 F.2d 517, 521 (1st Cir.1990)).

Further, "[e]quitable tolling ... is 'appropriate only when the circumstances that cause a plaintiff to miss a filing deadline are out of his [or her] hands.'" *Kelley v. NLRB*, 79 F.3d 1238, 1248 (1st Cir.1996) (quoting *Heideman v. PFL, Inc.*, 904 F.2d 1262, 1266 (8th Cir.1990), cert. denied, 498 U.S. 1026, 111 S.Ct. 676, 112 L.Ed.2d 668 (1991)). "Courts weigh five factors in assessing claims of equitable tolling: (1) the lack of actual notice of the filing requirement; (2) the lack of constructive notice of the filing requirement; (3) the diligence in pursuing one's rights; (4) the absence of prejudice to the defendant; and (5) the plaintiff's reasonableness in remaining ignorant of the filing requirement." *Benitez–Pons v. Puerto Rico*, 136 F.3d at 61 (citing *Kale v. Combined Ins. Co. of America*, 861 F.2d 746, 752 (1st Cir.1988)); *Kelley v. NLRB*, 79 F.3d at 1248; *see also Kale*, 861 F.2d at 753 (absence of prejudice factor is not an independent basis for invoking equitable tolling, but should apply only after another factor is identified that might justify tolling.) (quoting *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 152, 104 S.Ct. 1723, 1726, 80 L.Ed.2d 196 (1984) (per curiam)). Now, with a sufficient amount of background paint lapped on the canvas, the Court adds color by surveying Plaintiffs equitable tolling argument and supporting factual assertions on the record.

This suit precipitated from the revocation of the Plaintiffs license [11] to sell firearms and confiscation of their inventory of firearms and ammunition, one day in late 1969 or early 1970, from their store in Aguada, Puerto Rico, by police officers pursuant to a written order by the Treasury Department of Puerto Rico. The crux of Plaintiffs' contention is that because of the Defendants concealment of the dossiers on Plaintiffs, Plaintiffs did not have notice: of the injury, of the cause of the injury, and of the author of the injury.[12]

where the employer actively misled the employee'") (citation omitted); *Kale v. Combined Ins. Co. of Am.*, 861 F.2d 746, 752 (1st Cir.1988) (may be a number of grounds but most commonly asserted ground for equitable tolling "excusable ignorance" caused by employer misconduct or failure to inform—until employee receives actual notice or retains attorney); *Lopez v. Citibank, N.A.*, 808 F.2d 905, 907 (1st Cir.1987) (No absolute rule of tolling on mental disability grounds); *Earnhardt v. Commonwealth of P.R.*, 691 F.2d 69, 71 (1st Cir.1982) (equitable exception "appropriate only where employer actively misled the employee"); *Daughtry v. King's Dep't Stores, Inc.*, 608 F.2d 906, 908 (1st Cir.1979) (equitable tolling cases "deal with misleading action on the part of the employer or federal agency which resulted in the claimant's late filing."); *See, e.g., Johnson v. United States Postal Service*, 861 F.2d 1475, 1481 (10th Cir.1988) (Title VII limitation period will be tolled only for "active deception"); *Smith v. American President Lines, Ltd.*, 571 F.2d 102, 108–111 & n. 12 (2d Cir.1978) (similar); *Reeb v. Economic Opportunity Atlanta, Inc.*, 516 F.2d 924, 930–931 (5th Cir.1975) (employer allegedly "actively sought to mislead" by the "giving of misleading or false information [by the employer] to the victim."); *Cocke v. Merrill Lynch & Co.*, 817 F.2d 1559, 1561–1562 (11th Cir.1987) (plaintiff was "led to believe the employer [was] trying to place him in another job.").

11. *See* footnote 4 above.

12. The Court notes that no continuing violation is alleged nor is it applicable to the facts at hand. *See Thomas v. Eastman Kodak Co.*, 183 F.3d at 53–55; *Rivera–Muriente v. Agosto–Alicea*, 959 F.2d 349 (1st Cir.1992); *Velazquez v. Chardon*, 736 F.2d 831, 833 (1st Cir.1984) (Statute of limitations begins anew for each discrete violation however, "those violations preceding the filing of the complaint by the full limitations period are foreclosed."); *see also Reyes v. Municipality of Guaynabo*, 59 F.Supp.2d 305, 308 (D.P.R. 1999). Further, the Defendants in the instant case did not make any assurances that would have a tolling effect. *See Rodriguez–Suris v. Montesinos*, 123 F.3d 10, 13 (1st Cir.1997); *Villarini–Garcia v. Hospital Del Maestro, Inc.*, 8 F.3d 81, 85 (1st Cir.1993); *Colon Prieto v. Geigel*, 115 P.R. Dec. 232, 1984 WL 270950 15 P.R. Offic. Trans. 313, 330 (1984).

Moreover, Plaintiffs did not have nor could not have had notice of such even though they exercised due diligence, until the receipt of their dossiers in December 1992 and February 1993. The Court is unpersuaded that the facts of this case raise to the level necessary for the invocation of equitable tolling.

The form and detail of the picture are displayed by the analysis and weighing of the equitable tolling factors. The revocation/confiscation of late 1969 or early 1970 gave Plaintiffs actual notice of the injury and damage claimed in their present Amended Complaint. Knowledge as to the full extent of the damage is not needed.

### Factors (1) & (2) lack of actual or constructive notice of the filing requirement

Defendants fervently argue that the evidence on the summary judgment record leads to only one reasonable conclusion: that Plaintiffs, Carlos Rivera Ramos and Armando Rivera Tirado, knew the revocation/confiscation was consummated because of their political beliefs. As mentioned above, Plaintiffs at all relevant times have believed in and been vocal advocates for the independence of Puerto Rico and were members of the Puerto Rican Independence Party (PIP).[13]

On the other hand, Plaintiffs vehemently deny that they knew the cause of the revocation/confiscation was political discrimination. The Plaintiffs contend that Defendants nefariously concealed the discriminatory animus underpinning their overt actions. The Court will now analyze the facts relevant to Plaintiff Armando Rivera Tirado and Plaintiff Carlos Rivera Ramos.

#### (a) Armando Rivera Tirado

The deposition testimony of Plaintiff, Armando Rivera Tirado, who was present on the day of the revocation, reveals the following factual scenario:

13. See footnote 1 above.

Q Okay. Were you at the office the day the license was revoked?

A Oh, yes.

Q Do you remember the date?

A No, I don't remember the day, I don't remember the day, nor do I want to remember.

Q What were you doing?

A I was in the office, I was working.

Q Did you see who came in?

A Yes.

Q Who came in?

A There was a group of police that came armed. They surrounded the front of the store, of the office.

Q Approximately, how many people—how many policemen?

A There were five or six police officers that came.

Q Go ahead.

A And they asked for my father and they notified him that they had come to pick up the arms and the bullets because the license had been revoked.

*Q DID THEY TELL YOU WHY THE LICENSE WAS REVOKED?*

*A NO, THEY ONLY PICKED UP THE BULLETS WHEN THEY REVOKED IT AND THEY LET U.S. KNOW THAT WE WERE PRO–INDEPENDENCE.* Days before, they had come in—I remember this, as if it were today. The police had come and they asked permission to see if they could check for explosives because they had been putting explosives around. Supposedly, they alleged that there might be explosives in the store and they inspected everything, all three businesses, all of our stores. And none of the other stores in town. They inspected the whole building looking for bombs. And I remember that—I remember that vividly. I would imagine that it had something to do with that.

Q Did they tell you who they suspected was placing the explosives?

A No, no, just terrorists.

Q Who else was there besides you?

A Well, the other employees of the store were there. They're all dead. I'll give you the names anyway. Francisco Rivera who was my uncle.

Q Francisco Acevedo.

A Francisco Acevedo.

Q Anyone else?

A No, I don't remember. We all got so nervous. My father almost had a stroke right there. And my uncle—oh, and Carlos's (sic) father, my uncle came and we were all very affected by this.

Q Were there any clients in the store?

A Yes.

Q Do you remember who?

A Not that I can identify but, the business was full. And not only was it full, but when they saw the police came with arms, the whole front of the business was full of people, looking, spectators.

Q Do you—do you recall any of the people who were in the crowd?

A No, at that time, I was only paying attention to my uncle and father.

Q Where was your wife?

A My wife? My wife worked.

Q Umhum.

A And she, I would imagine, was in her office, in the superintendent of schools office. She worked as a supervisor in the cafeterias as a dietitian.

Q What was the first thing you did when you left the store?

A I don't remember. Well, I'll tell you something. I'll be frank with you, I suspected one person in Aguada and I regret it to this day and I ask God's forgiveness and I ask him. He's passed away. But I suspected somebody and I'll even say his name. He is name was Emilio Hernández. He was my teacher. But he was as American as American can get in Aguada.

I went specially to him to talk to him and that man cried like a baby. And he told us that he would never, ever do

that. And I'll be frank with you, I didn't believe him regardless of the fact that my father accepted it, I did not believe him.

And it wasn't until I saw the dossier and I was able to see the information and since, I couldn't apologize to him, I came to San Juan specially to see his son.

Q You suspected him, because of his political beliefs?

A That's correct, yes.

*Q SO YOU UNDERSTOOD THIS POLICE ACTION WAS TAKEN BE-CAUSE OF YOUR POLITICAL AF-FILIATION?*

*A THAT'S CORRECT, YES, YES. WE WERE AND ARE PRO–INDE-PENDENCE.*

(Deposition of Plaintiff, Armando Rivera Tirado, June 28, 1996, pp. 37–41) (emphasis added).

Plaintiffs counter that the same deposition testimony and other evidence establishes a genuine issue of material fact. Plaintiffs specifically call attention to this deposition question and answer, "Q Did they tell you why the license was revoked? A No, they only picked up the bullets when they revoked it and they let us know that we were pro-independence...." (Deposition of Plaintiff, Armando Rivera Tirado, June 28, 1996, p. 38). At a later deposition, Plaintiff, Armando Rivera Tirado, stated:

Q At your last deposition, you had occasion to discuss the fact that you were present the day of the revocation of the license.

A Yes, that is correct. The day of the revocation of the license or the day on which they took the

. . . . .

Q Who were they exactly?

A They were some policemen who went there.

. . . . .

Q Did you recognize any policemen who entered the store that day?

A I recognized one, but he's dead. He was police officer Vélez.

. . . . .

Q In other words, according to what you state there [at page 38 of the first part of his deposition], that same day you knew the reasons for which the weapons license was revoked.

. . . . .

A No, but it's that I cannot say that they told me that it was because we were "independentistas".

Q That's what it says there.

A Well, but what I want to say with that is not that they, not the Police, but that police officer Vélez whom I remember, that's the one who said to me, "maybe it's because you are Independentistas", that's all. But that's what I recall, that I made reference to police officer Vélez.... Because I knew him personally. He told me, "maybe it's because of this", but nothing more, I haven't heard anything else. And in truth, I could not have thought, at that time, that a thing such as that could have been done.

(Deposition of Plaintiff, Armando Rivera Tirado, October 15, 1996, pp. 18–19, 54). At this point, providing Plaintiffs with all reasonable inferences and because Defendants have not objected to admissibility of Plaintiff's, Armando Rivera Tirado, statements, there is a factual controversy as to whether the policeman informed Plaintiff of the official reason for the revocation/confiscation or just his personal belief.

Also, at this point and regardless of the qualification of the policeman's statement, the following statement remains uncontroverted, "Q So you understood this police action was taken because of your political affiliation? A That's correct, yes, yes. We were and are pro-independence." (Deposition of Plaintiff, Armando Rivera Tirado, June 28, 1996, p. 41). To close this gap Plaintiffs offer Armando Rivera Tirado's sworn statement of May 26, 1997. (Docket No. 229, Exhibit M). However, this evidence stands in direct contradiction to his prior deposition testimony that he understood the police action was taken because of his political beliefs. Further, the Court holds that no satisfactory explanation of why his clear and unambiguous testimony has changed. First Circuit precedent is very clear the "When an interested witness has given clear answers to unambiguous questions, he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony is changed." *Colantuoni v. Alfred Calcagni & Sons, Inc.,* 44 F.3d 1, 4–5 (1st Cir.1994) (citing 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2726, at [448–454 (3d ed.1998) ]; *Slowiak v. Land O'Lakes, Inc.,* 987 F.2d 1293, 1297 (7th Cir.1993); *Trans–Orient Marine v. Star Trading & Marine,* 925 F.2d 566, 572–73 (2d Cir.1991); *Davidson & Jones Dev. v. Elmore Dev.,* 921 F.2d 1343, 1352 (6th Cir.1991)); *see also Mahan v. Boston Water and Sewer Comm'n,* 179 F.R.D. 49, 53 (D.Mass.1998); *Melinas v. Divi Hotels Marketing, Inc.,* 1995 WL 598963 at *3–4 (D.Mass.1995). Thus, the Court finds Plaintiff, Armando Rivera Tirado, "understood this police action [ revocation/confiscation] was taken because of [his] political affiliation," that is because "We were and are pro-independence." Any inconsistency raised by his subsequent sworn statement must be stricken pursuant to First Circuit Court precedent.

### (b) Carlos Rivera Ramos

Plaintiff Carlos Rivera Ramos was not present when the police carried out the revocation/confiscation but had the following to say regarding notice:

Q Did your not having worked much in the firearms store—you didn't work there?

A No, I didn't work there.

Q So your knowledge of the daily operations of the firearms store is limited or none?

A Pardon me? I didn't understand.

Q Or none.

A Of the benefits of the—

Q The operations.

A No, I had no knowledge of that. I didn't operate the store.

Q *HOW DID YOU HEAR THAT THE LICENSE HAD BEEN REVOKED?*

A When they revoked the license, Remigio my uncle, his father, came to me almost in tears and gave me the news. He said, they've taken away our main source of business. And I said, for what. And he said, they've taken away our firearms and he was very, very upset. *AND THE REASON THAT WAS GIVEN TO ME IS, BECAUSE YOU AND ARMANDO ARE PRO–INDEPENDENCE.*

Q He said all that on that occasion?

A In that occasion that he came to me.

Q And where was that?

A That was in the ladies department store. I got there, he approached me and gave me the news.

Q So you weren't already in the office at the time? You arrived later?

A I used to walk around almost the whole store.

Q Do you know if he—if your uncle Remigio told you who else was at the store, at the hardware store when that incident occurred?

A He did not tell me, but I suppose the employees were there and I believe Armando was.

Q What did you hear about that incident afterwards?

A *WE ONLY GOT NEWS JUST ABOUT EVERYONE AROUND TELLING U.S. THAT THE LICENSE TO SELL FIREARMS HAD BEEN REVOKED BECAUSE WE WERE PRO–INDEPENDENCE AND WE HAD BEEN ACCUSED OF BEING DAN-GEROUS, BEING A DANGER TO THE GOVERNMENT.* And from there on, I began noticing that there was always somebody sitting in front of the business in the town plaza watching people coming in and out of the business.

(Deposition of Plaintiff, Carlos Rivera Ramos, June 28, 1996, pp. 31–33).

Plaintiffs attempt to dodge this bullet with Plaintiff's, Carlos Rivera Ramos, testimony at that same June 28, 1996 deposition:

Q And when you read the information contained, or the documents contained in the dossier, did you obtain information that you did not know before this?

A The only information that I knew was that I was pro-independence.

Q You also knew that the license that you made reference to had been suspended or did you not know?

A Oh, yes, we knew it, because it was before that.

Q Did you know about the reports that had been prepared about your person and—and the things that other people had said about you? Did you know any of that information?

A I knew nothing until I received the dossier.

Q And what was your reaction to the information contained in that document?

A Well, at first I was anger, (sic) because the people that were making the accusations were people that I never expected from, including the mayor of the town. We were friends. Such good friends, in fact, that everytime that we said hello, he would say hello to my wife by kissing her.

(Deposition of Plaintiff, Carlos Rivera Ramos, June 28, 1996, pp. 40–41). Notwithstanding, Plaintiffs' new reference testimony fails to rebut Plaintiff's, Carlos Rivera Ramos, own deposition testimony that "When they revoked the license, Remigio my uncle, his father, came to me almost in tears and gave me the news. He said, they've taken away our main source of

business. And I said, for what. And he said, they've taken away our firearms and he was very, very upset. And the reason that was given to me is, because you and Armando are pro-independence." · Nor does it contradict the statement ·when queried as to what he had heard about that incident afterwards, that "We only got news just about everyone around telling us that the license to sell firearms had been revoked because we were pro-independence and we had been accused of being dangerous, being a danger to the government. And from there on, I began noticing that there was always somebody sitting in front of the business in the town plaza watching people coming in and ·out of the business."

Again, Plaintiffs attempt to avert summary judgment by presenting a subsequent sworn statement, May 28, 1997, which this time directly contradicts Plaintiff's, Carlos Rivera Ramos, prior deposition testimony. (Docket No. 229, Exhibit N). Nonetheless for the same reasons as Plaintiff's Armando Rivera Tirado, this attempt is similarly flawed. *See Colantuoni v. Alfred Calcagni & Sons, Inc.,* 44 F.3d 1, 4–5 (1st Cir.1994) (citing 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2726, at [448–454 (3d ed.1998) ]; *Slowiak v. Land O'Lakes, Inc.,* 987 F.2d 1293, 1297 (7th Cir.1993); *Trans–Orient Marine v. Star Trading & Marine,* 925 F.2d 566, 572–73 (2d Cir.1991); *Davidson & Jones Dev. v. Elmore Dev.,* 921 F.2d 1343, 1352 (6th Cir.1991)); *see also Mahan v. Boston Water and Sewer Comm'n,* 179 F.R.D. 49, 53 (D.Mass.1998); *Melinas v. Divi Hotels Marketing, Inc.,* 1995 WL 598963 at *3–4 (D.Mass.1995). Consequently, as above, the sworn statement of Plaintiff's, Armando Rivera Tirado, is inconsistent with his own earlier deposition testimony and must be stricken.

Wherefore, the Court holds that Plaintiffs, Armando Rivera Tirado and Carlos Rivera Ramos were on notice that the revocation was motivated by political discrimination. Even if the contrary were held, and the Court were to find that no reason was stated for the nefarious actions of the police and Puerto Rico Department of Treasury, still Plaintiffs would not be saved from the jaws of summary judgment. Plaintiffs knew the stated reason for it, or lack thereof, and could assess its legitimacy.

Next, undeniably at the time of the revocation/confiscation Plaintiffs knew that the police and the Puerto Rico Department of Treasury were involved.

So, to summarize, Plaintiffs knew about their injury: their license was revoked and their merchandise was confiscated. Next, at a minimum, Plaintiffs were on notice that the actions taken against were illegitimate. Last, the police and the Department of Treasury were responsible. Armed with this knowledge the Plaintiffs must have diligently pursued their claim.

### Factor (3) the diligence in pursuing one's rights

Under this factor, once in possession of the above knowledge, Plaintiffs have failed to show adequate pursuance of a remedy. The revocation/confiscation was not judicially or administratively challenged. Plaintiffs aver that they wrote the Treasury Department on two separate occasions in an attempt to discover the reasons for the revocation of their licence but received no response. · For a multitude of reasons, not the least whereof is that no reference to the date the letters were sent, the letters do not constitute due diligence.[14] *See generally Rodriguez Narvaez*

---

**14.** Although the Plaintiffs were fully aware of the pending summary judgment motions, the only evidence of an "extrajudicial" claim is a reference to two letters in a deposition. *See* (Docket No. 229, Exh. F, p. 23); P.R. LAWS ANN. tit. 31, § 5303 (1994). Copies of the letters were not provided. Plaintiffs admit the letters were not answered. Again, no evidence indicates the dates on which the letters were sent. Plaintiffs have simply not proffered any evidence to the Court, which would allow the Court to assess whether the

*v. Nazario*, 895 F.2d at 43–46; *Leon–Nogueras v. University of P.R.*, 964 F.Supp. 585 (D.P.R.1997); *Diaz de Diana v. A.J.A.S. Ins. Co.*, 110 P.R.R. 602, 607–608 n. 1, 1980 WL 138494 (1980) (tolling provisions are restrictively interpreted against party invoking their protection.). More importantly, once interrupted, the one year limitation period begins to run anew and thus, the passage of twenty three years renders the point moot. *See id.*

The Plaintiffs further suggest that there is no way that they could have discovered the true nature of the discrimination and the identities of their perpetrators without the dossiers. The Court concludes that the nature of the discrimination was well

known and, further, the Plaintiffs were under a duty to seek out the perpetrators under federal and Puerto Rico law. *See e.g. Rivera–Ramos v. Roman*, 156 F.3d at 282–283 ("However, even assuming such culpable concealment, Puerto Rico law requires due diligence by the plaintiff in investigating suspicious circumstances."); *Benitez–Pons v. Puerto Rico*, 136 F.3d at 61–64; *Cooperativa de Ahorro y Credito Aguada v. Kidder, Peabody & Company*, 129 F.3d 222, 225 (1st Cir.1997); *Salois v. Dime Savings Bank of New York*, 128 F.3d 20, 25–26 (1st Cir.1997); [15] *Rodriguez–Suris v. Montesinos*, 123 F.3d 10, 16 (1st Cir.1997); [16] *Rivera–Gomez v. de Castro*, 900 F.2d at 3; *Ramirez Morales v.*

letters constitute an "extrajudicial" claim as interpreted by Puerto Rico precedent. *See Diaz de Diana v. A.J.A.S. Ins. Co.*, 110 P.R.R. at 602, 1980 WL 138494; *Rodriguez Narvaez v. Nazario*, 895 F.2d at 43–46; *Leon–Nogueras v. University of P.R.*, 964 F.Supp. 585 (D.P.R.1997). And, the nonmovant's conclusory allegations, improbable inferences, and unsupported speculation, cannot derail a well supported motion for summary judgment. *Medina–Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d at 8.

**15.** The federal doctrine of fraudulent concealment operates to toll the statute of limitations "where a plaintiff has been injured by fraud and 'remains in ignorance of it without any fault or want of diligence or care on his part.'" *Holmberg v. Armbrecht*, 327 U.S. 392, 397, 66 S.Ct. 582, 585, 90 L.Ed. 743 (1946) (quoting *Bailey v. Glover*, 88 U.S. (21 Wall.) 342, 348, 22 L.Ed. 636 (1874)); *see Maggio v. Gerard Freezer & Ice Co.*, 824 F.2d 123, 127 (1st Cir.1987). For plaintiffs to be successful in their argument, we must determine that "(1) sufficient facts were [not] available to put a reasonable [borrower] in plaintiff[s'] position on inquiry notice of the possibility of fraud, and (2) plaintiff[s] exercised due diligence in attempting to uncover the factual basis underlying this alleged fraudulent conduct." *Maggio*, 824 F.2d at 128. Thus, allegations of fraudulent concealment do not modify the requirement that plaintiffs must have exercised reasonable diligence. *See Truck Drivers & Helpers Union v. NLRB*, 993 F.2d 990, 998 (1st Cir.1993) ("Irrespective of the extent of the effort to conceal, the fraudulent concealment doctrine will not save a charging party who fails to exercise due diligence, and is thus charged with notice

of a potential claim."). In simpler terms, fraud may render reasonable a plaintiff's otherwise unreasonable conduct, but there are limits: plaintiffs must still exercise reasonable diligence in discovering that they have been the victims of fraud. *Salois v. Dime Savings Bank of New York*, 128 F.3d at 25–26.

**16.** The law of Puerto Rico treats a person as being aware of all that, having awareness constituting notice, that person would have been likely to come to know through the exercise of care. Thus, we understand the holdings of Puerto Rico decisions to mean that "actual knowledge is not required where, by due diligence, such knowledge would likely have been acquired." *Villarini–Garcia v. Hospital Del Maestro, Inc.*, 8 F.3d 81, 84 (1st Cir.1993). It follows, then, that to determine the point at which a plaintiff should be held responsible for the required level of awareness of whether another particular person was an author of the injury, a court looks to "whether plaintiff knew or with the degree of diligence required by law would have known whom to sue." *Kaiser v. Armstrong World Indus.*, 872 F.2d 512, 516 (1st Cir. 1989) (citations and internal quotation omitted). Once a plaintiff is made aware of facts sufficient to put her on notice that she has a potential tort claim, she must pursue that claim with reasonable diligence, or risk being held to have relinquished her right to pursue it later, after the limitation period has run. *See, e.g., Villarini–Garcia*, 8 F.3d at 85. *Rodriguez–Suris v. Montesinos*, 123 F.3d at 16.

*Rosa Viera*, 815 F.2d at 5. *Torres Ramirez v. Bermudez Garcia*, 898 F.2d 224, 229 & n. 2 (1st Cir.1990); *see also Torres v. Superintendent of Police of P.R.*, 893 F.2d at 407. Plaintiffs have failed to comply with the duty. Had the Plaintiffs filed suit at a minimum they would have tested the legitimacy of the reason for· the revocation/confiscation and the Court believes, quite possibly, confirmed the discriminatory reason claimed at the depositions. Plaintiffs have "failed to exercise due diligence in preserving [their] legal rights." *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 96, 111 S.Ct. 453, 457–458, 112 L.Ed.2d 435 (1990); *see Wilson v. United States Government*, 23 F.3d 559, 561 (1st Cir.1994).

### Factor (4) the absence of prejudice to the defendants

The Plaintiffs' claims accrued in early 1970 and yet, the Complaint was not filed until October 1993 over 23 years. . Resurrecting the decayed skeleton of a claim after being buried for such a prolonged rest, demonstrates an enormous amount of hardship and prejudice to the Defendants.

### Factor (5) plaintiffs' reasonableness in remaining ignorant of the filing requirement

In light of the above discussion and the facts in Plaintiffs' possession, their ignorance as to the filing deadline in this case is unreasonable.

The Court has found that Plaintiffs were on notice of the discriminatory intent behind the revocation/confiscation. Moreover, even if the Court was to hold that, as the Plaintiffs contend, no reason for the revocation was given to them, then a reasonable plaintiff must attempt to ascertain what the reason for the revocation was and its legitimacy. When Plaintiffs were made aware of an actual injury, such as a license revocation, over twenty three years ago it is unreasonable for them to simply fold their arms and slumber on their rights until another symptom of that past injury (dossiers) revives them from their anesthetized state. *See Salois v. Dime Savings Bank of New York*, 128 F.3d at 25–26; *Rodriguez–Suris v. Montesinos*, 123 F.3d at 16. Further, there is no indication that Defendants actively misled as to the injury or damage in a way that would have restricted the Plaintiffs challenging the legitimacy of the revocation/confiscation. *See Thomas· v. Eastman Kodak Co.*, 183 F.3d at 53 (Federal law—equitable tolling only where malfeasor actively misled victim.); *Benitez–Pons v. Puerto Rico*, 136 F.3d at 61 (Puerto Rico law—equitable ·tolling for willfully and wrongfully concealed by author or same.). Moreover, the record in this case has no formal challenge or substantiated claim of concealing of requested evidence; thus the Court cannot find that Defendants actively mislead Plaintiffs as to the cause of the revocation. *See id.* Selective ignorance does not toll a statute of limitations. On the contrary, statute of limitations are designed to protect would be defendants from having to defend themselves against stale claims.

The bell has tolled on Plaintiffs' causes of action. Tolling of the statute of limitations is an equity remedy available to the Court for the purpose of neutralizing the caustic effects of the statute of limitations when a defendant has actively ·deceived the plaintiff into not timely filing a cause of action which has accrued. After the long passage of time, the Complaint was filed approximately twenty-three years following .the revocation (and nearly thirty years to date), the Plaintiffs themselves are unable to identify with certainty the date on which the police officers entered their premises to effectuate the revocation, and simply state it occurred "[i]n or about late 1969 or early 1970." *Amended Complaint* (Docket No. 59, ¶ 27). To resurrect this stale claim would contravene the very ·basis for the enactment of statutes of limitations. ·"It goes without saying that statutes of limitations often make it impossible to enforce what were otherwise perfectly valid claims. But that is their very purpose, and they remain as ubiquitous as the statutory rights or other rights to which

they are attached or are applicable." *United States v. Kubrick,* 444 U.S. at 125, 100 S.Ct. at 361. "A federal cause of action 'brought at any distance of time' would be 'utterly repugnant to the genius of our laws.' *Adams v. Woods,* 2 Cranch 336, 342, 6 U.S. 336, 2 L.Ed. 297 (1805). Just determinations of fact cannot be made when, because of the passage of time, the memories of witnesses have faded or evidence is lost. In compelling circumstances, even wrongdoers are entitled to assume that their sins may be forgotten." *Wilson v. Garcia,* 471 U.S. 261, 271, 105 S.Ct. 1938, 1944, 85 L.Ed.2d 254 (1985); *see also Agency Holding Corp. v. Malley–Duff & Assocs.,* 483 U.S. 143, 156, 107 S.Ct. 2759, 2767, 97 L.Ed.2d 121 (1987).

"In a nutshell, equitable tolling is reserved for exceptional cases and the record before us simply lacks the ingredients necessary to warrant invocation of the doctrine." *Chico–Velez v. Roche Products, Inc.,* 139 F.3d 56, 59 (1st Cir.1998). "We have allowed equitable tolling in situations where . . . the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass. We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights." *Irwin v. Department of Veterans Affairs,* 498 U.S. at 96, 111 S.Ct. at 457–458 (citations omitted). There has been no evidence of "affirmative misconduct on the part of a defendant [which] lulled the plaintiff into inaction." *Baldwin County Welcome Center v. Brown,* 466 U.S. at 151, 104 S.Ct. at 1725; *see also Thomas v. Eastman Kodak Co.,* 183 F.3d at 53 (Federal law—equitable tolling only where malfeasor actively misled victim.). Similarly, Plaintiffs fail to meet the standard for equitable tolling under Puerto Rico law where "damage [has been] willfully and wrongfully (dolosamente) concealed by the author of the same." *Ramirez Morales v. Rosa Viera,* 815 F.2d 2, 4 (1st Cir.1987) (quoting *Rivera Encarnacion v. Estado Libre Asociado De Puerto Rico,* 113 D.P.R. 383, 386, 1982 WL 210553 (1982)). Lastly, "equitable tolling is unavailable where a party fails to exercise reasonable diligence [as Plaintiffs have in this case]." *Benitez–Pons v. Puerto Rico,* 136 F.3d at 61. "In the absence of a recognized equitable consideration, the court cannot extend the limitations period by even one day." *Rice v. New England College,* 676 F.2d 9, 11 (1st Cir.1982).

### D. Equitable Estoppel under Federal law.

"Equitable estoppel has a similar origin and effect as equitable tolling, although it is a distinct doctrine. *See Kale,* 861 F.2d at 752. Equitable estoppel is available in § 1983 actions. *See Smith v. City of Chicago Heights,* 951 F.2d 834, 839 (7th Cir.1992). Even when a federal court borrows a state's statute of limitations, the court applies federal equitable estoppel principles. *See id.* at 841. '(1) The party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury.' *Clauson v. Smith,* 823 F.2d 660, 661 (1st Cir.1987). The 'reliance must have been reasonable in that the party claiming the estoppel did not know nor should it have known that its adversary's conduct was misleading.' *Heckler,* 467 U.S. at 59, 104 S.Ct. at 2223. " 'If, at the time when he acted, such party had knowledge of the truth, or . . . with reasonable diligence he could acquire the knowledge . . . he cannot claim to have been misled by relying upon the misrepresentation or concealment.' " *Id.* (quoting 3 J. Pomeroy, Equity Jurisprudence § 810, at 219 (S. Symons ed.1941)). Indeed, 'the conduct of the defendant must be so misleading as to cause the plaintiff's failure to file suit.' " *Sanchez v. Loffland Bros.,* 626 F.2d 1228, 1231 (5th Cir.1980) (footnote omitted).

*Benitez–Pons v. Puerto Rico,* 136 F.3d at 63. Finally, Plaintiffs claim that the doctrine of equitable estoppel saves the day averting dismissal. There are numerous flaws in the Plaintiffs' argument, as discussed in the preceding equitable tolling section, such as: that the Plaintiffs were equipped with sufficient facts to file suit; that Defendants' conduct did not prevent Plaintiffs from initiating this action; that Plaintiffs were not diligent in pursuit of their claims; and therefore, Plaintiffs reliance was not reasonable. Wherefore, equitable estoppel does not operate to save Plaintiffs' suit. *See id.*

## IV. CONCLUSION

The Court holds that Plaintiffs' claims accrued in early 1970 and therefore the one year statute of limitations has long since run. Equitable tolling doctrines under federal and Puerto Rico law nor equitable estoppel considerations fail to resurrect Plaintiffs' stale claim. Consequently, Defendants' motions for summary judgment are **GRANTED** and Plaintiffs' federal claims are hereby **DISMISSED**. The dismissal of Plaintiffs' federal claims leaves only Plaintiffs' claims under Puerto Rico law. Pursuant to 28 U.S.C. § 1367(c) and *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966), the Court declines to exercise supplemental jurisdiction over Plaintiffs' Commonwealth claims against the Defendants and hence, the Puerto Rico law causes of action are **DISMISSED WITHOUT PREJUDICE.** *See e.g. Houlton Citizens' Coalition v. Town of Houlton,* 175 F.3d 178, 192 (1st Cir.1999). Judgment is to be entered accordingly.

IT IS SO ORDERED.