12   *Lawson, et al. v. Shelby County, Tennessee, et al.*   No. 98-6065

## II.

Accordingly, I respectfully dissent from the majority's opinion because I would affirm the district court's opinion by finding that the statute of limitations barred this action.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0155P (6th Cir.)
File Name: 00a0155p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

RANDY LAWSON and SHARON LAWSON,

       *Plaintiffs-Appellants,*

       *v.*

SHELBY COUNTY, TENNESSEE, and its division the SHELBY COUNTY ELECTION COMMISSION, O.C. PLEASANT, JR., DAVID H. LILLARD, JR., YVONNE B. ACEY, RICHARD L. HOLDEN, and MYRA STILES, in their official capacity as members of the Shelby County Election Commission, and THE STATE OF TENNESSEE and DON SUNDQUIST, in his official capacity as Governor of the State of Tennessee,

       *Defendants-Appellees.*

No. 98-6065

Appeal from the United States District Court for the Western District of Tennessee at Memphis. No. 97-03034—Bernice B. Donald, District Judge.

Submitted: October 26, 1999

Decided and Filed: May 3, 2000

Before: MARTIN, Chief Judge; SUHRHEINRICH and
SILER, Circuit Judges.

_____

**COUNSEL**

**ON BRIEF:** Mark L. Pittman, PITTMAN & KELLY,
Memphis, Tennessee, for Appellants. William J. Marett, Jr.,
OFFICE OF THE ATTORNEY GENERAL, Nashville,
Tennessee, for Appellees.

MARTIN, C. J., delivered the opinion of the court, in
which SILER, J., joined. SUHRHEINRICH, J. (pp. 10-12),
delivered a separate dissenting opinion.

_____

**OPINION**

_____

BOYCE F. MARTIN, JR., Chief Judge. Randy and Sharon
Lawson appeal an order dismissing their amended complaint
for failure to state a claim. The Lawsons claim that they were
denied the right to vote when they refused to disclose their
social security numbers as a condition to exercising their right
to vote to the Shelby County Election Commission.

On September 26, 1996, Randy and Sharon Lawson
attempted to register to vote in Shelby County by mail.
Instead of writing their social security number as required on
the voter registration form, Randy and Sharon each wrote
"See Public Law 93-579." Public Law 93-579 is an
amendment to the Freedom of Information/Privacy Act,
which states that neither the federal, state, nor local
governments may deny benefits because of an individual's

In *Delaware State College v. Ricks*, a junior faculty
member was notified that he had been denied tenure, but was
given a "terminal" contract that extended his employment for
one-year beyond the date his tenure was denied. The
Supreme Court found that the cause of action for his denial of
tenure accrued on the date that he was given notice of the
denial, rather than on the date of his termination at the
conclusion of his "terminal" contract. The Court noted that
the "termination of employment at Delaware State *is a
delayed, but inevitable consequence of the denial* of tenure."
*Id*. at 257-58 (emphasis added). The Supreme Court has also
held that for the purposes of computing the statute of
limitations period, the "proper focus is on the time of the . . .
act, not the point at which the c*onsequences* of the act become
painful." *Chardon v. Fernandez*, 454 U.S. at 8 (42 U.S.C.
§ 1983 employment termination case)(original emphasis).

This notice-based test to determine when a cause of action
has accrued has also been applied in a variety of other civil
rights actions. *See, e.g., Watts v. Graves*, 720 F.2d 1416 (5th
Cir. 1983) (per curiam) ( 42 U.S.C. § 1983 civil rights action
against local police alleging violation of Fourth Amendment
rights based on warrantless search); *Eagleston v. Guido*, 41
F.3d 865 (2d Cir. 1994) (42 U.S.C. § 1983 civil rights action
against police alleging equal protection violation in police
arrest policies relating to domestic violence complaints).

Likewise, in this case, the Lawsons' inability to vote on
November 5, 1996, was a delayed, but inevitable consequence
of the denial of their registration application in October, 1996.
The alleged deprivation of their rights occurred, and the filing
limitations period began to run, at the time their registration
application was denied, even though the effect of that denial
did not occur until election day. Since the Lawsons were
notified of that denial in October, 1996, more than one year
prior to filing their complaint, their suit is time-barred.

———————————

### DISSENT

———————————

SUHRHEINRICH, Circuit Judge, dissenting.    I write separately to respectfully dissent from the majority's opinion because I would find that this suit is barred by the one-year statute of limitations.

### I.

I agree with the majority that a one-year statute of limitations applies to this case under Tennessee law. I also agree that federal law determines when a cause of action is deemed to have accrued. However, I disagree with the majority's finding that the cause of action in this case accrued on election day, November 5, 1996. Instead, I agree with the district court and would find that the cause of action accrued in October, 1996, when the plaintiffs were given official notice that they were being denied the right to vote because of their failure to provide their social security numbers.

Generally, a civil rights cause of action accrues when the plaintiff knew or should have known of the injury. For example, the Supreme Court held that a cause of action accrues at the time the plaintiff has notice of the discriminatory act for civil rights cases in the employment context. *See Delaware State College v. Ricks*, 449 U.S. 250 (1980) (denial of tenure case filed under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981 accrued on date tenure was denied, not when employment terminated a year later as a result of that denial); *see also Janikowski v. Bendix Corp.*, 823 F.2d 945, 947-48 (6th Cir. 1987) (Age Discrimination in Employment Act action accrued on date employee was notified of pending termination, not on the actual date of termination) (citing *Chardon v. Fernandez*, 454 U.S. 6 (1981) (per curiam), and *Delaware State College v. Ricks*, 449 U.S. 250 (1980)).

refusal to disclose his social security number. The Shelby County Election Commission notified the Lawsons before the October 5 registration deadline that their registration was denied because they omitted their social security numbers.

The Lawsons attempted to vote in the November 5 general election, but were denied because they were not registered. Randy and Sharon each presented to the election official at the poll, a letter, for signature, stating that he/she was being denied the right to vote because his/her registration was rejected for failure to disclose his/her social security number.

On November 5, 1997, exactly one year after the election, the Lawsons filed suit in federal court against Shelby County, the Shelby County Election Commission and the Chair of the Commission, Mr. O.C. Pleasant, Jr., "individually and in his official capacity." The Lawsons, seeking injunctive and declaratory relief, damages and attorney's fees, claim that they were denied the right to vote on November 5, 1996, because they refused to disclose their social security numbers on their voter registration form. This, they allege, constituted a deprivation of their rights, privileges and immunities secured by the Constitution of the United States under the First and Fourteenth Amendments, Article IV § 1 of the Tennessee Constitution, and the Privacy Act of 1974. The Lawsons then filed an Amended Complaint on February 27, 1998, naming all the remaining members of the election commission in their official, but not in their individual, capacities, the State of Tennessee, and Governor Sundquist in his official capacity. In their second amended complaint, the Lawsons assert a cause of action under 42 U.S.C. § 1983.

After granting the Lawson's permission to amend their complaint, the district court dismissed the Lawsons' claims finding that they were barred by the Eleventh Amendment, and assuming that the complaint was not barred by the Eleventh Amendment, the claims were barred by the one year statute of limitations. The Lawsons filed a timely notice of appeal to this Court on July 31, 1998.

This Court reviews de novo the district court's dismissal for failure to state a claim upon which relief can be granted. *Cline v. Rogers*, 87 F.3d 176, 179 (6th Cir. 1996).

The Lawsons contend that the district court erred in dismissing their suit for failure to state a claim upon which relief can be granted because Eleventh Amendment immunity does not apply to suits brought by a private citizen seeking injunctive or declaratory relief against a state official. The full text of the Eleventh Amendment provides: "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." As originally drafted, the suits to which the Amendment referred were only those suits brought against a state by out-of-state or foreign citizens. But, in 1890, the Supreme Court held that in-state as well as out-of-state citizens were barred by the Eleventh Amendment from suing a state. *Hans v. Louisiana*, 134 U.S. 1 (1890). Under current law, the Amendment is a bar to federal court jurisdiction whenever any private citizen attempts to sue a state.

There are, however, three qualified exceptions to Eleventh Amendment immunity, only two of which are addressed by the district court in this case. First, a state may waive the protection of the Amendment by consenting to the suit. Consent may occur in a number of ways. A state may expressly waive immunity from suit for money damages in court. *Thiokol Corp. V. Mich. Dep't of Treasury*, 987 F.2d 376 (6th Cir. 1993). Consent may also take the form of a voluntary appearance and defense on the merits in federal court. *Clark v. Barnard*, 108 U.S. 436 (1883). Furthermore, consent may result when the state agrees to administer a federal-state program that imposes certain federal standards

the cause of action accrued, thus satisfying the statute of limitations.

Thus, we remand the case to the district court to order such relief as will allow the Lawsons to vote and such other relief as appropriate.

election day for failing to be registered. The denial of the right to vote, they contend, occurred at the moment they were denied the opportunity to vote on election day. Defendants, however, dispute this contention, arguing instead that the Lawsons were denied the right to vote when they received notice that their registration application was not successful on October 1, 1996, which is more than a year before the complaint was filed. The district court agreed with Defendants on this issue and therefore dismissed the case.

We reverse the district courts decision on this issue for two reasons. First, the issue at hand in this case is the fundamental right to vote not the right to register to vote. The U.S. Constitution protects an individual's right to vote during an election, not the right to register to vote prior to an election.

Second, the district court cites a number of wrongful employment termination cases in its opinion to show that employees brought actions against their respective employers outside of the limitations periods as measured from the dates on which they were notified that they had been terminated. *Chardon v. Fernandez*, 454 U.S. 6 (1981); *In re Rin*, 782 F.2d 603 (6th Cir. 1986). The court concludes that the "act" is what is important, not the point at which the consequences of the act become painful. These cases, however, do not apply to the Lawson's situation. The Lawsons were not denied the right to vote when they were notified that their registrations had been rejected, they were denied the right to vote when they presented themselves at the appropriate polling place and were denied access to the voting booth. The rejection letters merely served as notice to the Lawsons that they were not registered, and in order to become registered, they needed to provide their social security numbers. This could have been done up until the time they presented themselves at the polls on election day. Therefore, the harm to the Lawsons occurred on November 5, 1996 (election day) when they presented themselves at their polling station and were refused the right to vote. The complaint was then filed within one year after

upon the state.[1]  In this case, the district court correctly asserted that no consent had been given by the defendant to satisfy this first exception to the Eleventh Amendment bar. Thus, the exception does not apply here.

The second exception to the Eleventh Amendment bar is that Congress, under certain provisions of the Constitution, may abrogate the sovereign immunity of the states through statute. For a Congressional abrogation of state sovereign immunity to be valid, two conditions must be satisfied. First, Congress must state clearly that it intends a statute to abrogate state sovereign immunity. *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 55 (1996).[2] Second, a determination must be made as to whether Congress has acted "pursuant to a valid exercise of power."[3] *Id.* Thus, the mere fact that a statute was passed is not enough to show that Congress intended to nullify state sovereign immunity. Defendants correctly assert in their brief that Congress never expressly abrogated state sovereign immunity under the Privacy Act. Thus, the Lawsons cannot escape the Eleventh Amendment bar against their Privacy Act claim under the second exception. But Defendants also note that the Lawsons may be able to circumvent a state sovereign immunity defense under a third exception to the Eleventh Amendment bar.

---

[1] Thus far, consent to suit on this basis has never been found. *See Atascadero State Hospital v. Scanlon*, 473 U.S. 234 (1985).

[2] The Supreme Court has found no clear statement of intent to abrogate under the Civil Rights Act, 42 U.S.C. § 1983. *Quern v. Jordan*, 440 U.S. 332 (1979).

[3] Congress may abrogate state sovereign immunity under the Fourteenth Amendment. *Fitzpatrick v. Bitzer*, 427 U.S. 445 (1976). The Supreme Court has suggested that Congress may also abrogate state sovereign immunity under the Fifteenth Amendment. *City of Rome v. United States*, 446 U.S. 156 (1980).

Under the third exception, a federal court may enjoin a "state official" from violating federal law. *Ex parte Young*, 209 U.S. 123 (1908). The idea behind this exception is that a suit against a state officer is not a suit against the state when the remedy sought is an injunction against an illegal action, for an officer is not acting on behalf of the state when he acts illegally. In effect, the illegal act strips the state officer of his character as an agent of the state for the purposes of the Eleventh Amendment. Injunctive relief is available under the *Young* exception only against state officers — not the state itself — who violate federal law. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984). Relief ancillary to injunctive relief, such as attorneys' fees is also permitted. *Hutto v. Finney*, 437 U.S. 678 (1978). However, retroactive relief, such as money damages, is not permitted because such relief would require the "payment of funds from the state treasury." *Edelman v. Jordan*, 415 U.S. 651 (1974).

In this case, because the *Young* exception is limited to the award of prospective nonmonetary relief, any claim for retroactive relief or damages is barred under the Eleventh Amendment. *Id*. In addition, the Lawsons' claims against the State of Tennessee are barred by the Eleventh Amendment, because the Amendment prohibits suits against a "state" in federal court whether for injunctive, declaratory or monetary relief.

However, the Lawsons' claims for prospective injunctive and declaratory relief against the individual state and county officials should not be dismissed. Under the fiction of *Ex parte Young*, these officials may be stripped of their character as agents of the state when they violate federal law. The Lawsons allege that Governor Sundquist, the Chairman of the Shelby County Election Commission and the remaining members of the Commission engaged in conduct that violated federal law when they denied the Lawsons the right to vote for failing to disclose their social security numbers. Thus, their request for prospective injunctive relief against these officials is permitted under the *Young* exception. Moreover,

because the Lawsons' requests for declaratory relief and attorneys' fees are ancillary to their request for prospective injunctive relief, such relief would also fall under the *Young* exception.

Finally, subdivisions of the state, such as counties and municipalities, are not protected by the Eleventh Amendment. *Lincoln County v. Luning*, 133 U.S. 529 (1890). The Eleventh Amendment limits the jurisdiction only as to suits against a state.[4]  *Id*., at 530. Even though a county is territorially a part of the state, it is also a corporation created by it, and is therefore only a part of the state "in that remote sense in which any city, town or other municipal corporation may be said to be a part of the state." *Id*. In this case, the Lawsons filed suit against Shelby County and the Shelby County Election Commission. These entities are not protected by the Eleventh Amendment under *Luning*. Therefore, the Lawsons' claims against these entities should not have been dismissed on Eleventh Amendment grounds.

In regard to the district court's dismissal of the Lawson's case based on an expired statute of limitations, the Lawsons argue that the court's decision should be reversed because the complaint was filed within the required time period. The statute of limitations for federal civil rights claims is the appropriate state statute of limitations. *Wilson v. Garcia*, 471 U.S. 261 (1985). Tennessee law requires that actions brought under the federal civil rights statutes shall be commenced within one year after the cause of action accrues. Tenn. Code Ann. § 28-3-104(a)(3). Federal law ordinarily determines when a cause of action is deemed to have accrued. *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984).

The Lawsons filed their complaint on November 5, 1997, exactly one year after they were turned away from the polls on

---

[4]Suits may be brought by private citizens against counties and municipalities under section 1983. *Monell v. Department of Social Services*, 436 U.S. 658 (1978).