**D.L. BRAUGHLER COMPANY, INC., Plaintiff,**

v.

**Commonwealth of KENTUCKY, Defendant.**

**No. CIV.A. 03–12–JMH.**

United States District Court, E.D. Kentucky, Frankfort.

July 9, 2003.

Buckner Hinkle, Cassidy Ruschell, Stites & Harbison, Lexington, KY, Judith A. Villines, Stites & Harbison, Frankfort, KY, for Plaintiff.

John S. West, Kathryn M. Hargraves, Frankfort, KY, for Defendant.

### MEMORANDUM OPINION AND ORDER

HOOD, District Judge.

This matter is before the Court on the defendant's motion dismiss Plaintiff's complaint as provided for under Fed.R.Civ.P. 12(b)(6) [Record No. 4]. Plaintiff has responded [Record No. 7], and Defendant has replied [Record No. 9]. This matter is now ripe for a decision.

### FACTUAL BACKGROUND

Defendant Commonwealth of Kentucky (hereinafter, "Kentucky") is the owner of Maxey Flats, a low-level radioactive waste site located in Fleming County, Kentucky. Plaintiff avers that Kentucky is one of the numerous "potentially responsible parties"

for the clean-up of that site within the meaning of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"). 42 U.S.C. § 9601, *et seq.* In an earlier matter before the United States District Court, *United States of America v. U.S. Ecology, Inc., et al.,* Defendant was a party to a settlement resulting in a Consent Decree, comprising the De Maximus Consent Decree and the De Minimis Consent Decree, outlining a remedial plan to clean up the site and plan for long-term monitoring and maintenance. *See United States of America v. U.S. Ecology, Inc., et al.,* Civil Action No. 95–58 (E.D.Ky., Frankfort Division).

Pursuant to that Consent Decree, the "Settling Private Parties" were to select a supervising contractor to supervise remedial work. International Technology Corporation ("ITC") was selected to serve in that role and approved by the United States Environmental Protection Agency ("EPA"). The Consent Decree divided remedial work into two parts. The Initial Remedial Phase ("IRP") was the first portion of the work, including certain tasks and performance and monitoring requirements related to those tasks. The second phase, or the Balance of Remedial Phase ("BRP"), included other tasks comprising the Interim Maintenance Period ("IMP") and the Final Closure Period ("FCP"). The Settling Private Parties were to undertake the work in the Initial Remedial Phase, and the Commonwealth was to undertake the work in the Balance of the Remedial Phase.

Plaintiff subcontracted with ITC to perform work defined in the IRP and was to "furnish labor, supervision, equipment and material to complete" an earth mounded concrete bunker, designed to contain radioactive contaminated mixture of cement and water, per certain design specifications as well as other work defined in the subcontract. As part of the bunker de-

sign, Braughler installed approximately 7,100 linear feet of material to function as a waterstop. However, a portion of the material was defective and nonconforming to the specifications. As a result of the defective and nonconforming waterstop, contaminated water leaked from the bunkers. ITC remedied the leak and backcharged the repair cost to Plaintiff. Plaintiff alleges that this backcharge deprived payment for other work satisfactorily performed at the site and that, as a result, it has not been paid for remedial work it performed at Maxey Flats as part of the IRP and seeks damages pursuant to 42 U.S.C. § 9607(a).

## STANDARD OF REVIEW

Defendant has moved this Court to dismiss Plaintiff's complaint pursuant to Fed. R.Civ.P. 12. As such, this Court must accept all factual allegations in Plaintiff's complaint as true. *Broyde v. Gotham Tower, Inc.,* 13 F.3d 994, 996 (6th Cir. 1994). The claims may be dismissed only if it is clear that no relief could be granted on any set of facts that could be proven consistent with the allegations, and this Court's review amounts to a determination of whether it is possible for the plaintiff to prove any set of facts in support of those claims that would entitle her to relief. *Sistrunk v. City of Strongsville,* 99 F.3d 194, 197 (6th Cir.1996); *Miller v. Currie,* 50 F.3d 373, 377 (6th Cir.1995). Generally, this Court must ignore all outside evidence submitted by the parties in ruling on the pending motions to dismiss. However, a court may consider public records, those matters of which the Court may take judicial notice, and letter decisions of governmental agencies. *Jackson v. City of Columbus,* 194 F.3d 737, 745 (6th Cir.1999), *overruled on other grounds, Swierkiewicz v. Sorema,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).

## DISCUSSION

### 1. JUDICIAL NOTICE

■ Pursuant to FED. R. EVID. 201, the Court takes judicial notice of the Consent Decree, comprising the De Maximus Consent Decree and the De Minimis Consent Decree, entered in Civil Action No. 95–58, an earlier matter before the United States District Court, Eastern District of Kentucky, Frankfort Division. FED. R. EVID. 201; *Saylor v. United States*, 315 F.3d 664, 667–68 (6th Cir.2003); *United States v. Garland*, 991 F.2d 328, 332 (6th Cir.1993).

### 2. SOVEREIGN IMMUNITY

■ The Eleventh Amendment grants a state immunity from suit in federal court for money damages in actions filed by its own citizens. *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). As a general matter, a party is entitled to immunity if that party is a state or if the party is otherwise an agent or instrumentality of the state, and, thus, a state cannot be sued in its sovereign capacity in federal court. *See Regents of the Univ. of California v. Doe*, 519 U.S. 425, 429, 117 S.Ct. 900, 137 L.Ed.2d 55 (1997). However, the burden of proving that a party is entitled to that protection rests squarely on the party seeking to assert immunity. *Gragg v. Kentucky Cabinet for Workforce Dev.*, 289 F.3d 958, 963 (6th Cir.2002).

■ Defendant asserts that this case should be dismissed because the Commonwealth of Kentucky is entitled to sovereign immunity. However, the Court must first consider the three exceptions to sovereign immunity under the Eleventh Amendment that may be stated as follows: (1) under certain provisions of the Constitution, Congress may abrogate the sovereign immunity of the states through statute; (2) a state may waive the protection of the Amendment by consenting to suit; and (3) a federal court may enjoin a "state official"

from violating federal law under the doctrine of *Ex Parte Young*. *Lawson v. Shelby County, Tennessee*, 211 F.3d 331 (6th Cir.2000); *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). As Plaintiff requests money damages from Defendant, only the first and second exceptions are applicable in the instant matter.

■ With regard to the first exception, it is taught that Congress may abrogate the sovereign immunity of the states only when legislation purporting to do so is enacted pursuant to a valid grant of constitutional authority. *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). Abrogation may not be based upon the powers enumerated in Article I of the Constitution, including the Commerce Clause. *Bd. of Trustees v. Garrett*, 531 U.S. 356, 363, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001). Plaintiff seeks to recover under 42 U.S.C. § 9607(a), a provision of CERCLA. CERCLA was enacted under the auspices of the Commerce Clause and does not constitute a congressional abrogation of Defendant's otherwise intact Eleventh Amendment immunity. *See Burnette v. Carothers*, 192 F.3d 52, 59 (2d Cir.1999), cert. denied, 531 U.S. 1052, 121 S.Ct. 657, 148 L.Ed.2d 560 (2000). This is to say that the Commonwealth's sovereign immunity is intact with regard to CERCLA actions absent a waiver of that immunity.

■ In that regard, the Sixth Circuit Court of Appeals has recognized a variety of ways in which a waiver of immunity may occur. *Lawson*, 211 F.3d at 334. A state may expressly waive immunity from suit in court. *Id.* A state may waive its immunity by voluntarily appearing in court and defending on the merits of the case. *Id.* Finally, consent may result where a state agrees to administer a federal-state program requiring that the state meet certain

federal standards. *Id.* Plaintiff argues that Defendant's motion to dismiss must be denied because the Commonwealth consented to suit in federal court by signing the Consent Decree governing the remediation plan for the Maxey Flats site and that, by the present action, Braughler seeks nothing more than to recover remediation costs incurred pursuant to the Consent Decree.[1]

Plaintiff theorizes that, by agreeing to the terms of the Consent Decree, the Commonwealth expressly consented to this Court's jurisdiction for any and all matters involving the Consent Decree and, thus, waived any sovereign immunity available by virtue of the Eleventh Amendment.[2] Defendant argues that any such waiver would be irrelevant in this matter because (1) Braughler, a subcontractor, is not a party to the Consent Decree and (2) the Commonwealth has not violated the Consent Decree so that there is nothing to enforce. Plaintiff has responded that it does not seek to enforce the Consent Decree, *per se,* arguing instead that it brought this action under 42 U.S.C. § 9607(a) in an effort to recover what it alleges to be direct costs associated with remediation from Defendant.

 Plaintiff does not and cannot deny that its relationship to and responsibility

for cleanup of the contaminated site results exclusively from its contract with ITC, even though that contract may have contemplated design and remediation pursuant to the Consent Decree. The language of "remediation" aside, Plaintiff cannot avoid the fact that it seeks nothing more than to recover on the contract it entered into with ITC when it agreed to provide the services for which it now seeks remuneration. Thus, whether or not Defendant Commonwealth of Kentucky waived its sovereign immunity with regard to matters arising from the Consent Decree is ultimately a moot issue, and, in any event, the Court remarks that the universe of claims encompassed by such a waiver would not be infinite. A contract that references the Consent Decree does not become enforceable via a CERCLA action merely by reference to the remediation efforts undertaken pursuant to that Consent Decree, particularly where Plaintiff attempts to sue a party to the Consent Decree that is not also a party to the contract. Defendant clearly has not waived immunity with regard to such an action, particularly considering that the Commonwealth was never a party to that contract. Notwithstanding the merits of Plaintiff's attempts to recover from Defendant, the Commonwealth's sovereign im-

---

**1.** Plaintiff makes a feeble attempt to argue that the Commonwealth has somehow agreed to administer a federal-state program requiring that the state to meet certain federal standards by entering the Consent Decree, citing *Lawson v. Shelby County,* 211 F.3d 331, 334 (6th Cir.2000). A review of that case does not suggest that a Consent Decree, resulting from an adversarial action between a federal agency, a state, and numerous private parties would necessarily constitute such a program nor does it suggest that consent based on this exception has ever been found. *Id.* at 334 n. 1, *citing Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985). The Court is not convinced that this argument is tenable in this matter and has

determined not to grant Plaintiff's request for a stay, pending examination of certain materials under a Kentucky Open Records Act request, in order to further explore this argument, particularly in light of Plaintiff's failure to articulate how the Consent Decree might qualify for this exception in light of existing case law.

**2.** Braughler avers that the construction of the concrete bunker was outlined in Appendix B to the Consent Decree in the IRP work and that by entering into the Consent Decree the Commonwealth agreed to assume responsibility for that portion of the remediation of the Maxey Flats site.

munity under the Eleventh Amendment bars this suit, and the matter shall be dismissed.

Accordingly, IT IS ORDERED:

(1) that Defendant's motion to dismiss [Record No. 4] be, and the same hereby is, GRANTED;

(2) that this action be, and the same hereby is, DISMISSED WITH PREJUDICE AND STRICKEN FROM THE ACTIVE DOCKET.