# United States Court of Appeals
## For the First Circuit

No. 04-2306

VÍCTOR GONZÁLEZ-ÁLVAREZ, CARMEN ECHEVARRÍA-VÉLEZ,
and the conjugal partnership composed by them,
Plaintiffs, Appellants,

v.

LUIS RIVERO-CUBANO, JANE DOE,
and the conjugal partnership composed by them,

JUAN R. PEDRÓ-GORDIÁN, LIZET E. QUIÑONES,
and the conjugal partnership composed by them,
Defendants, Appellees.

---

No. 04-2373

LUIS ALFONSO-DELGADO, LYDIA MORA-DELGADO,
and the conjugal partnership composed by them,
Plaintiffs, Appellants,

v.

LUIS RIVERO-CUBANO, JANE DOE,
and the conjugal partnership composed by them,

JUAN R. PEDRÓ-GORDIÁN, LIZET E. QUIÑONES,
and the conjugal partnership composed by them,

FERNANDO TOLEDO, JOAN POE,
and the conjugal partnership composed by them,
Defendants, Appellees.

---

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO
[Hon. Gustavo A. Gelpí, U.S. Magistrate Judge]

---

Before
Torruella, Circuit Judge,
Coffin, Senior Circuit Judge,
and Lipez, Circuit Judge.

_Jennifer Odell_, on brief, for appellants Víctor González-Álvarez and Carmen Echevarría-Vélez.

_Wigberto Lugo-Mender_, on brief, for appellants Luis Alfonso-Delgado and Lydia Mora-Delgado.

_Joseph Frattallone-Martí_, on brief, for appellees.

October 17, 2005

**TORRUELLA**, **Circuit Judge**.  This appeal requires us to consider the claims of two dairy farmers, each convicted of milk adulteration, who, along with their wives, now assert that the relevant Puerto Rico regulatory agency's decision to cancel their milk production quotas deprived them of valuable property in violation of the Takings Clause of the U.S. Constitution.  U.S. Const. amend. V, XIV.  We find no merit to these claims and affirm the decision of the district court.

## I.  Facts

Víctor González-Álvarez ("González") and his wife Carmen Echevarría-Vélez ("Echevarría") owned a dairy farm in Arecibo, Puerto Rico licensed by the Milk Industry Regulation Office ("ORIL," in Spanish) through the Puerto Rico Department of Agriculture, pursuant to P.R. Laws Ann. tit. 5, § 1101, et seq. (2005).  Luis Alfonso-Delgado ("Alfonso") and his wife Lydia Mora-Delgado ("Mora") also owned a dairy farm in Hatillo, Puerto Rico subject to the same licensing and regulatory regime.  In separate incidents, González and Alfonso were convicted of adulterating the milk they sold in an attempt to increase the volume they produced.

After their convictions, appellants González and Alfonso lost their licenses to produce milk after ORIL administrative proceedings.  They do not now contest this decision.  However, ORIL also cancelled appellants' milk quotas.  Under Puerto Rico's regulations of the dairy industry, dairy farmers' milk production

-3-

is limited to the total quota which they have purchased from ORIL. A quota is "the amount of milk quarts that the Administrator of the Milk Industry Regulation Office assigns to be produced every fourteen (14) days by cattlemen, in accordance to the market needs." Milk Industry Quota Transaction Registry, Law Number 301 of Sept. 1, 2000, Art. 1(c) ("Law 301"). After years of purchasing milk quotas through ORIL, by 2002 González and Echevarría had accumulated quotas authorizing them to produce up to 25,000 liters of milk every two weeks. Likewise, Alfonso and Mora had purchased milk quotas from ORIL authorizing them to produce up to 18,600 liters of milk every two weeks. Appellants contend that these quotas were their personal property and that they could not be taken from them without just compensation.

Appellants assert that the milk quotas are currently sold at a rate of at least $32.00 per liter. Therefore, appellants González and Echevarría estimate that they are owed not less than $800,000, which they claim to be the fair market value of their quotas. Similarly, appellants Alfonso and Mora seek compensation of not less than $595,000 for their cancelled quotas.

## II. **Analysis**

The district court did not reach the merits of the federal constitutional takings claims raised by either set of appellants. In the case of Alfonso and his wife, it found that their claims were time barred with regard to all defendants. In

the case of González and his wife, the district court found that the claims against certain defendants were barred by the statute of limitations and that the remaining defendants were entitled to qualified immunity. Thus, appellants now seek review of two main issues: (1) whether the instant actions were filed within the relevant statute of limitations; and (2) whether defendants are entitled to qualified immunity. Because we agree with the district court that the claims of both sets of plaintiffs-appellants are precluded by the statute of limitations or qualified immunity, we affirm the decisions of the district court.

## A. __Statute of Limitations__

Both sets of appellants dispute the district court's findings that some or all of their claims are time-barred. Pursuant to 42 U.S.C. § 1983, we apply the forum state's statute of limitations period for personal injury actions. See Rivera-Muriente v. Agosto-Alicea, 959 F.2d 349, 352 (1st Cir. 1992). There is no dispute that in Puerto Rico the statute of limitations is one year, and that federal law is applied to determine when the limitations period begins to accrue. See id. at 353. Rather, both sets of appellants argue that the district court erred in its determination of the date on which the statute of limitations began to accrue. In addition, appellants argue that, under Puerto Rico law, the wives involved in these cases also possessed a property interest in the milk production quotas, and thus the statute of

limitations could not begin to run until they were notified of the cancellation of the quotas.

On April 7, 2000, appellant Alfonso was convicted of milk adulteration to increase the volume of milk produced, and on July 12, 2000, Carlos Cabán-Nieves ("Cabán"), then Administrator of ORIL, issued an administrative ruling that revoked Alfonso's milk production license and quotas. Alfonso did not appeal this ruling, and on March 23, 2001, defendant Juan R. Pedró-Gordián ("Pedró"), the new Administrator of ORIL, sent Alfonso a letter informing him that the July 2000 ruling would be implemented March 29, 2001. However, in the meantime, Alfonso had mistakenly been granted a new license, and on May 30, 2001, he filed a case with ORIL alleging that Pedró had no right to suspend his license, which ORIL denied in October 2001. Alfonso also appealed this case to the Puerto Rico Appeals Court, which upheld the ORIL decision. Alfonso Delgado v. Pedró-Gordián, No. KLRA20020447 (T.C.A. Aug. 20, 2002). Meanwhile, on May 14, 2002, Pedró mailed a letter to Alfonso notifying him that the cancellation would become effective June 5, 2002. Alfonso and his wife Mora filed the complaint in the instant case on July 7, 2003.

Appellant González was also convicted in 2000 of milk adulteration to increase the volume of milk produced, and on December 21, 2001, ORIL Administrator Pedró issued an administrative ruling revoking González's milk production license

and quotas.  González appealed this ruling to the Puerto Rico Court of Appeals, <u>Milk Quality Program of the Milk Industry Regulation Office</u> v. <u>González-Álvarez</u>, No. KLRA0200084 (T.C.A. Apr. 26, 2002), and then to the Puerto Rico Supreme Court.  On September 27, 2002 his request for reconsideration by the Puerto Rico Supreme Court was denied.  Appellants González and Echevarría filed the complaint commencing this action on November 5, 2003.  Appellants González and Echevarría argue that the statute of limitations did not begin to run until November 6, 2002, the date on which the manufacturing plant ceased picking up milk from their dairy farm.

In a § 1983 claim, the statute of limitations generally begins to run "when the plaintiff 'knows or has reason to know of the injury which is the basis for the claim.'"  <u>Rodríguez-García</u> v. <u>Municipality of Caguas</u>, 354 F.3d 91, 96-97 (1st Cir. 2004) (quoting <u>Rodríguez-Nárvaez</u> v. <u>Nazario</u>, 895 F.2d 38, 41 n.5 (1st Cir 1990)). Among the precedent established by the Supreme Court, we find no indication that property must be physically seized or that actual economic harm must have already been felt before a takings claim accrues.  In the context of regulatory takings, for instance, the Supreme Court has held that such claims are ripe when the plaintiff has received "a 'final decision regarding the application of the [challenged] regulations to the property at issue' from 'the government entity charged with implementing the regulations,'" and the plaintiff has sought compensation through the procedure

-7-

provided by the state. <u>Suitum</u> v. <u>Tahoe Reg'l Planning Agency</u>, 520 U.S. 725, 734 (1997) (quoting <u>Williamson County Reg'l Planning Comm'n</u> v. <u>Hamilton Bank of Johnson City</u>, 473 U.S. 172, 186 (1985)). Since in this case, the state has always clearly denied that any compensation would be due and there is no state remedy available for seeking compensation, the second hurdle falls away. <u>See</u> <u>Williamson County</u>, 473 U.S. at 194-96.

Both sets of appellants argue that the statute of limitations could not begin to run until the date on which the milk manufacturing plant actually discontinued picking up appellants' milk.[1]  However, after the quotas were cancelled by ORIL,

---

[1]  Appellants cite to a number of cases that miss the mark.  In support of their theory, plaintiffs cite to <u>Lawson</u> v. <u>Shelby County</u>, 211 F.3d 331 (6th Cir. 2000), in which the plaintiffs asserted a deprivation of their right to vote.  The Sixth Circuit held that plaintiffs "were not denied the right to vote when they were notified that their registrations had been rejected, they were denied the right to vote when they presented themselves at the appropriate polling place and were denied access to the voting booth." <u>Id.</u> at 336.  In this case, by contrast, the deprivation at issue occurred when the plaintiffs' milk quotas were cancelled (i.e., when the alleged "taking" occurred), not when the milk collection actually was suspended.

<u>Ramos</u> v. <u>Román</u>, 83 F. Supp. 2d 233 (D.P.R. 2000) is no more helpful to plaintiffs.  In <u>Ramos</u>, the issue was not whether the statute of limitations began to run when the plaintiffs' license to sell firearms was revoked or when the weapons were actually confiscated (both of which were outside the statute of limitations).  Rather, the question was whether the limitations period did not commence until much later, when the plaintiffs learned that the license revocation and the confiscation were motivated by political discrimination.  The district court concluded that "the Plaintiffs['] action accrued the day the police effectuated the confiscation of plaintiffs' firearms and ammunition pursuant to the Department of Treasury's revocation of the

-8-

appellants were simply waiting for the decision to be enforced.  In this case, a quota is simply the right to sell a given amount of milk.  Assuming that that legal right is "property," when ORIL issued its decision cancelling appellants' quotas, appellants were already deprived of the property at issue, and the statute of limitations began to run as of that date.  Cf. Suitum, 520 U.S. at 736 n.10  (finding that facial challenges to regulation are generally ripe the moment the challenged regulation is passed, so long as the owners can demonstrate that the enactment deprived them of any economically viable use of the property).  Because we find that Alfonso and his wife "[knew], or ha[d] reason to know of the injury which is the basis for his claim," Rodríquez-García, 354 F.3d at 96-97, on July 12, 2000, when ORIL issued its administrative decision revoking Alfonso's license, this action

Plaintiffs' license to sell firearms."  Id. at 239.  Immediately after reaching this conclusion, the court cited a case in which the First Circuit "assume[d] arguendo that [the plaintiff's] claim accrued at the latest possible date."  Id. at 239 n.6 (quoting Benítez-Pons v. Commonwealth of P.R., 136 F.3d 54, 60 (1st Cir. 1998)).  In short, the Ramos court did not hold that the claim accrued when the weapons were confiscated, as opposed to when the license was revoked; it held that the claim accrued at one of these earlier dates (assuming arguendo that it was the latter of the two), as opposed to two decades later, when the plaintiffs learned the reason for the revocation.  Ramos therefore does not stand for the proposition that the plaintiffs' milk quotas were not "taken" until milk collection was actually suspended.

filed July 7, 2003 was commenced beyond the one-year statute of limitations.[2]

For the same reasons, we find that the statute of limitations began to run for the claims brought by González and his wife on December 21, 2001, when ORIL issued its administrative decision revoking González's license.[3]   This action filed November 5, 2003 would then clearly be beyond the one-year statute of limitations.  However, in this case, the district court found -- and it is unchallenged by any party -- that the statute of limitations was tolled as to defendant Pedró, in his personal capacity, and his wife, Lizet Quiñones, by an action filed by González in bankruptcy court in the interim.[4]   Thus, the instant federal action was timely filed against them.

---

[2]   Appellants' later challenges to the cancellation of the quotas do not toll the statute of limitations.  Under Puerto Rico law, in order for tolling to occur, the remedies sought in both suits must be identical.  See Torres v. Superintendent of Police, 893 F.2d 404, 407 (1st Cir. 1990).  In this case, neither set of appellants had previously sought damages, which they are seeking in their current § 1983 claims.

[3]   In the bankruptcy complaint he filed on November 1, 2002, González himself admits that in the December 21, 2001 resolution, "ORIL stated that they were to cancel debtor's milk production quota."   The evidence indicates that upon receipt of the December 21, 2001 ORIL resolution, González had reason to know, and did in fact subjectively believe, that ORIL was cancelling his milk quotas and that he would not be compensated for any portion of their estimated $800,000 value.

[4]   The action in bankruptcy court tolled the statute of limitations from the date of its filing on November 1, 2002, until it was dismissed for lack of jurisdiction on November 5, 2003.

Appellants argue that González's bankruptcy court complaint should have also tolled the statute of limitations with respect to Secretary of Agriculture Rivero Cubano and his wife. We disagree. Appellants argue that because Rivero Cubano was included in his official capacity as a defendant in the bankruptcy complaint, the statute of limitations was tolled for actions against him in his personal capacity as well. Whereas González and his wife named appellee Pedró in his personal capacity, they chose to name appellee Rivero Cubano only in his official capacity as Secretary of Agriculture. Furthermore, the portion of the complaint that alleges possible 42 U.S.C. § 1983 allegations refers only to appellee Pedró. In general, "defendants sued only in their official capacities in the original complaint cannot be expected to be on notice of the very different issues raised by claims against them in their personal capacities." Rodríguez-García, 354 F.3d at 100 (finding that defendants sued only in their official capacity would not be on notice, but that, in this case, defendants waived any objection to the statute of limitations on that basis). We therefore affirm the district court's conclusion that the claims against defendants Rivero Cubano and his wife are time barred.

Another argument implicit in appellants' claims is that, although appellants were aware that the milk quotas were cancelled, it was not until much later that they discovered that ORIL did not plan to pay them just compensation. We find this argument entirely

unconvincing.  Although there may be cases in which a person could reasonably be uncertain about whether they were going to receive compensation for their taken property, this is not such a case. Appellants were well aware that the cancellation of their milk quotas was a direct result of their milk adulteration, and as such, they could not have reasonably expected compensation, where no mention of compensation was made.  Had the government planned on compensating appellants for their quotas, it would have said so. See Hair v. United States, 350 F.3d 1253, 1261 (Fed. Cir. 2003) (rejecting plaintiff's argument that the government must clearly announce its intention not to pay compensation before the statute of limitations can begin to run, and recognizing that it is generally obvious when the government denies liability for its action).  To accept appellants' argument would allow the government to prevent a cause of action from accruing simply by failing to state explicitly that it does not plan to pay compensation.  See id.  This cannot be the case.

Finally, both sets of appellants argue that even if the statute of limitations began to run on the dates determined by the district court with respect to the claims brought by Alfonso and González, the same cannot be said of their wives' claims, because they were not provided notice of the cancellation of their husbands' licenses and the milk quotas.  However, we find that, under Puerto Rico law, separate notice is not required to both the

-12-

husband and wife in a conjugal partnership.  Cf. Blas v. Hospital Guadalupe, 146 D.P.R. 267, 304 (1998) (finding that each spouse is a co-administrator of the conjugal partnership, and as such, each ordinarily has the capacity to represent it); Pauneto v. Núñez, 115 D.P.R. 591, 594 (1984) (recognizing that jurisdiction may be acquired over the conjugal partnership by service of one of the co-administrators).  We, therefore, find that upon their husbands' receipt of notice of the quota cancellation, the statute of limitations began to run for actions brought by both the husbands and their wives.[5]  Thus, as we concluded above, only González's and Echevarría's claims against defendant Pedró and his wife were timely filed.[6]

## B.  **Qualified Immunity**

Having already concluded that all other claims in this consolidated appeal are time barred, we now consider appellants González's and Echevarría's claims against defendants Pedró and his wife, who assert the defense of qualified immunity.[7]  "For a

---

[5]  We note here that even if these claims were timely filed they would still fail under the qualified immunity analysis described below.

[6]  We also consider that it is not entirely clear whether the wives can be said to have a property interest in the quotas.  While generally in Puerto Rico all marital property is owned by the conjugal partnership, only individuals with a license can own milk production quotas, and, in this case, only González and Alfonso have such a license; their wives do not.

[7]  The claims against the wives in this case, including Pedró's wife Lizet Quiñones, are derivative of the claims against their

-13-

plaintiff to overcome a qualified immunity defense, he must show [1] that his allegations, if true, establish a constitutional violation; [2] that the right was clearly established; and [3] that a reasonable official would have known that his actions violated the constitutional right at issue." Mihos v. Swift, 358 F.3d 91, 98-99 (1st Cir. 2004).

In the opinion from which this appeal arises, the district court essentially skipped over the first inquiry in order to reach the subsequent queries, which it found decisive. The court reasoned that "even assuming arquendo, that constitutional rights were violated, . . . it was objecti[vely] reasonable for Pedró to believe that his actions did not violate these clearly established rights."[8] González-Álvarez v. Rivero Cubano, No. 03-2193, slip op. at 7 (D.P.R. July 23, 2004). Although we recognize the logic of this approach, the court's election to forego deciding

_____

husbands. The claim against Lizet Quiñones, therefore, cannot survive once we determine that her husband, who committed the alleged violation of appellants' rights, is entitled to qualified immunity.

[8] We note that the district court used the same approach to assert qualified immunity in Alfonso-Delgado v. Rivero Cubano, No. 03-1625, slip op. at 6 (D.P.R. Aug. 5, 2004). In that case, the court also concluded that "even assuming arquendo, that constitutional rights were violated, summary judgment should be granted on qualified immunity grounds." Id. For the reasons we will explain with regard to the district court's opinion in González-Álvarez, No. 03-2193, slip op. at 7, we reject this approach. However, we will not belabor the point, since none of the claims made by Alfonso and his wife were brought within the statute of limitations.

whether the cancellation of the milk quotas constituted an unconstitutional taking, and instead to dismiss the claims based on the failure to demonstrate that whatever rights may have been violated were "clearly established," runs contrary the analysis required by the Supreme Court.

"A court required to rule upon the qualified immunity issue must consider . . . this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry." Saucier v. Katz, 533 U.S. 194, 201 (2001). The Court explained the necessity of first deciding whether the actions in question constituted a violation of the plaintiff's constitutional rights:

> In the course of determining whether a constitutional right was violated on the premises alleged, a court might find it necessary to set forth principles which will become the basis for a holding that a right is clearly established. This is the process for the law's elaboration from case to case, and it is one reason for our insisting upon turning to the existence or nonexistence of a constitutional right as the first inquiry. The law might be deprived of this explanation were a court simply to skip ahead to the question whether the law clearly established that the officer's conduct was unlawful in the circumstances of the case.

Id. The district court -- by "assuming arguendo" that a constitutional violation had occurred -- was able to dismiss the cases without deciding whether the cancellation of appellants' milk

-15-

quotas did in fact constitute an unconstitutional taking of their property. The problem with this methodology is that the law will be no clearer when future similarly situated plaintiffs bring the same claim. This unending state of ambiguity, which potentially allows the bad man (in this context, a government official) to walk the line time and time again, is precisely what the Supreme Court instructs us to avoid.

Thus, we must now consider whether appellants' allegations, if true, establish a constitutional violation. See Mihos, 358 F.3d at 98. In this case, the essential facts are undisputed, and we have no difficulty in concluding that the cancellation of appellants' milk production quota did not constitute a taking for which they would be entitled to compensation. The quota cancellation was a sanction for González's milk adulteration; it was not a taking of private property for public use for which the federal Constitution requires compensation to be made. See U.S. Const. amend. V ("nor shall private property be taken for public use, without just compensation"). We fail to see how the cancellation of appellants' quotas as a consequence of their milk adulteration is different from any other fine or forfeiture imposed under state law consequent to engaging in some harmful activity.

Appellants' claim is perhaps more aptly described as a claim that the Puerto Rican government deprived them of their

personal property without due process of law.  In this vein, appellants argue that this sanction was not mandated, or even permissible, under Puerto Rico law.  Presumably, appellants have avoided describing their argument in these terms because they have already raised this argument in the Puerto Rico courts.  They are now collaterally estopped from relitigating these issues in federal court.[9]  The Puerto Rico Court of Appeals rejected appellant González's claim that ORIL lacked the authority to cancel his milk quotas, and found no evidence that the cancellation was arbitrary, illegal or an abuse of discretion.  González-Álvarez, No. KLRA0200084, Official Translation at 5.[10]  Thus, even if we were to

---

[9]  "The [Puerto Rico Supreme] Court has also found Article 1204 to encompass the doctrine of collateral estoppel, holding that when a fact essential to the prior judgment is actually litigated and determined by a valid and final judgment, the determination is conclusive in subsequent litigation among the parties."  Félix Davis v. Vieques Air Link, 892 F.2d 1122, 1124-25 (1st Cir. 1990) (citing Pereira v. Hernández, 83 P.R.R. 156, 161 (1961)).  The district court found that collateral estoppel did not apply to appellants' takings claims, because the issue of compensation was never raised in the previous proceedings.  González-Álvarez, No. 03-2193, slip op. at 4.  See also Alfonso-Delgado, No. 03-1625, slip op at 6.  However, we find that the most logical reading of the opinions of the Puerto Rico Court of Appeals is that they decided those cases on the well-founded assumption that appellants would never receive any compensation for the cancelled quotas.  See González-Álvarez, No. KLRA0200084; Alfonso Delgado, No. KLRA20020447.  Nor does the inclusion of González's wife prevent collateral estoppel, as we have found that her interest was adequately represented by her husband in the original Puerto Rico court action.

[10]  The Puerto Rico Court of Appeals' decision in Alfonso Delgado, No. KLRA20020447, reinforces our understanding of the court's reasoning in González-Álvarez, No. KLRA0200084. After considering appellant Alfonso's arguments, the Puerto Rico Court of Appeals

-17-

construe appellants' arguments in these due process terms, the key issues have already been litigated in the Puerto Rico courts, and it has been determined that the appellants' milk quotas were cancelled in accordance with Puerto Rico law.

For these reasons, we find that even assuming all allegations by appellants are true, defendant Pedró did not violate appellants' constitutional rights. Thus, Pedró is entitled to qualified immunity, and the district court correctly dismissed appellants' claims on that basis.

### III. <u>Conclusion</u>

For the foregoing reasons, the decision of the district court is affirmed.

**<u>Affirmed</u>**.

---

held that "[t]he cancellation of the quotas . . . is the direct and unavoidable consequence of having permanently cancelled the license of a cattleman." <u>Alfonso Delgado</u>, No. KLRA20020447, Certified Translation at 9.